1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DEVONTE B. HARRIS,

                  Plaintiff,

    v.

HUMBERTO GERMAN, et al.,

              Defendants.

1:15-cv-01462-GSA-PC

**ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED AS BARRED BY STATUTE OF LIMITATIONS**
**(ECF No. 8.)**

**THIRTY-DAY DEADLINE TO RESPOND**

## I.       BACKGROUND

Devonte B. Harris ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on September 28, 2015.  (ECF No. 1.)

On December 18, 2015, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c), and no other parties have made an appearance.  (ECF No. 7.)  Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required.  Local Rule Appendix A(k)(3).

On March 14, 2016, Plaintiff filed the First Amended Complaint, which is now before the court for screening.  (ECF No. 8.)

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.   PLAINTIFF'S ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff is presently a state inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR), incarcerated at California State Prison-Sacramento in Represa, California.  The events at issue in the First Amended Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was incarcerated there. Plaintiff brings this civil rights action against defendant prison officials employed by the CDCR at CSP.  Plaintiff names as defendants Correctional Officer (C/O) Humberto German,

C/O Philip Holguin, C/O Summer Cordova, C/O L. Borgess, C/O R. Womack, C/O D. Lovelady, C/O D. Menzie, C/O D. Botello, C/O S. Pano, C/O R. Leal, C/O R. Burnitzki, Sergeant (Sgt.) J. Martinez, Sgt. W. Rasley, and Sgt. J. Hubbard (collectively, "Defendants").

Plaintiff's allegations follow.  On February 24, 2011, Plaintiff was housed in the Security Housing Unit (SHU).  At about 1:15 p.m., C/Os were releasing prisoners to the exercise modules.  C/Os German, Holguin, Menzie, Lovelady, and Botello skipped over Plaintiff's cell during yard and then ignored him when he called to them to ask why.  C/O Womack was working in the control booth.  C/Os German and Holguin came back and released Plaintiff after everyone else had been released. Plaintiff stripped out and C/O German kept asking him, "What's the problem?"  C/O German continued to hold Plaintiff's clothing as Plaintiff stood naked, apparently expecting an answer.  Plaintiff said, "I'm done stripping out, can I have my clothes back?"  Plaintiff got dressed and C/O German handcuffed him.  As they escorted Plaintiff to the yard, C/O Holguin placed Plaintiff against the wall by the exit door of the building and began pressing him up against the wall.  C/O German said, "You are getting your yard, so what's the problem?"  Plaintiff said that C/O Holguin was pressing him hard into the wall unnecessarily.  C/O German said to shut up or he was not going to receive yard time.  Plaintiff said he knows the law and has family who care, so he doesn't care what they do.  C/O German said shut up and don't talk.  They exited the building and walked toward the yard cages.  Sgt. Martinez saw them from the track holding Plaintiff aggressively and asked, "What's going on?"  Plaintiff began to tell him and C/O German jerked Plaintiff to a standstill and said, "I thought I told you not to talk."  At seeing this, Sgt. Martinez said to just escort Plaintiff back to his cell.  Upon entering the building, C/Os German and Holguin slammed Plaintiff's face into the divider of their office window.  C/O Holguin held Plaintiff's face sideways against the window.  C/O German kicked Plaintiff's legs apart, making him do the splits.  Holguin shouted, "Fuck the law and fuck your family."  German said, "What you wanna do?" over and over.  C/O German threatened to take Plaintiff to the ground.  Sgt. Martinez, C/O Menzie, C/O Lovelady, and C/O Botello entered the building.  C/O Womack witnessed from the control booth.  They did nothing nor said nothing while Holguin had Plaintiff's face pressed

against the window and German had Plaintiff's legs unnaturally spread apart. Plaintiff said he just wanted to go to yard, and German said, "You are not going to yard, so where do you want to go, back to your cell?" Plaintiff said he wanted to talk to the lieutenant for an excessive force interview. Martinez said, "You'll get what you got coming, you'll get your excessive force interview." C/Os German and Holguin escorted Plaintiff back to his cell. Plaintiff suffered knots on his forehead, a swollen cheek, pain in the neck, pain on the right side of his chest, and pain in the small of his back. On February 26, 2011, Sgt. Hubbard interviewed Plaintiff and documented his injuries on video. Sgt. Rasley operated the video camera. Plaintiff was medically evaluated by a nurse. On February 27, 2011, a RN evaluated Plaintiff. On February 29, 2011, another RN evaluated him. At some point, Sergeants Hubbard and Rasley destroyed the video documenting Plaintiff's injuries while the injuries were still visible on February 26, 2011. Plaintiff filed a prison appeal. On May 16, 2011, two sergeants took another videotaped interview of Plaintiff, but his injuries had already healed. They claimed to have lost the February 26, 2011 video.

On March 10, 2011, C/O German denied Plaintiff his breakfast in retaliation for the excessive force allegations Plaintiff made against him. C/O German refused to take Plaintiff's inmate request form asking why.

On April 18, 2011, C/Os Cordova and Borgess retaliated against Plaintiff for the allegations he made against their coworkers German and Holguin. They denied Plaintiff breakfast and lunch, and then falsified his segregation record, saying they had delivered both of the meals to Plaintiff. Later that morning, C/O Menzie escorted the nurse. When the nurse delivered Plaintiff's medication, Plaintiff held the food port on his cell and told C/O Menzie he wanted to see the sergeant about his breakfast and lunch being withheld. C/O Menzie continued escorting the nurse. C/O Holguin came to Plaintiff's cell to see if he wanted to go to a disciplinary hearing. Plaintiff refused because he was holding the food port. C/O Holguin summoned Sgt. Martinez who ordered C/O Holguin to pepper spray Plaintiff to secure the food port. C/O Holguin pepper sprayed Plaintiff and Plaintiff released the food port and went to the middle of his cell, turning his back. C/O Holguin put his pepper spray through the food port

and began spraying Plaintiff in the back of his head, neck, and back.  Plaintiff suffered severe burning sensations and chest pain.  C/O Borgess and another C/O escorted Plaintiff to the hospital to be evaluated.  C/Os Borgess and Cordova falsified Plaintiff's segregation records, reporting that Plaintiff had refused his breakfast and lunch.  Plaintiff was moved to a different housing unit in the SHU.

On August 28, 2011, C/Os Holguin and Pano came to Plaintiff's housing unit to escort him to the yard.  They conducted an unclothed body search, handcuffed Plaintiff behind his back, and began walking outside toward the yard cages.  C/O Holguin told Plaintiff to pull up his boxers, which was impossible because Plaintiff was handcuffed behind his back.  Plaintiff told C/O Holguin to pull his eyes up.  C/O Holguin then began escorting Plaintiff to the rotunda of his housing unit.  There was a cage located there and while guiding Plaintiff into it, C/O Holguin shoved Plaintiff into the wall, causing pain in his shoulder.  C/O Holguin then secured the cage and left.  C/Os Lovelady and Burnitzki walked by and asked Plaintiff what was going on.  Plaintiff said that C/O Holguin had used excessive force against him and the sergeant should be notified.  They took no action regarding this matter.  Afterward, C/O Holguin came to the rotunda to take Plaintiff back to his cell when yard time was over.  C/Os Holguin, Burnitzki, and Leal took Plaintiff to his cell but did not have the control booth C/O close the cell door.  They came all the way into the cell with Plaintiff.  C/Os Burnitzki and Holguin began pushing Plaintiff back and forth to each other several times.  C/O Holguin then pushed Plaintiff into the wall, jammed his left arm into Plaintiff's back, and used his right hand to press Plaintiff's face against the wall, while C/O Burnitzki pulled on the handcuffs from behind.  C/O Holguin told Plaintiff, "You're not shit, you are going to stop disrespecting me and I don't care about any lawsuit."  Plaintiff said he did not disrespect him.  Holguin was mad because he was under investigation by internal affairs for previously using excessive force against Plaintiff.  C/O Burnitzki then said, "Internal affairs are not going to do shit."  Holguin said next time they are going to really hurt Plaintiff.  C/O Holguin then pulled Plaintiff by the handcuffs to the cell door and took his handcuffs off.

///

5

**IV.    Statute of Limitations**

In federal court, federal law determines when a claim accrues, and "under federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'"  Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008) (quoting Two Rivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999)).  In the absence of a specific statute of limitations, federal courts should apply the forum state's statute of limitations for personal injury actions.  Lukovsky, 535 F.3d at 1048; Jones v. Blanas, 393 F.3d 918, 927 (2004); Fink, 192 F.3d at 914.  California's two-year statute of limitations for personal injury actions applies to 42 U.S.C. § 1983 claims.  See Jones, 393 F.3d at 927.  California's statute of limitations for personal injury actions requires that the claim be filed within two years.  Cal. Code Civ. Proc., § 335.1.

In actions where the federal court borrows the state statute of limitations, the court should also borrow all applicable provisions for tolling the limitations period found in state law.  See Hardin v. Straub, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000 (1989).  Pursuant to California Code of Civil Procedure, § 352.1, a two-year limit on tolling is imposed on prisoners.  Section 352.1 provides, in pertinent part, as follows:

> (a) If a person entitled to bring an action, . . . is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal. Code Civ. Proc., § 352.1.

Although the statute of limitations is an affirmative defense that normally may not be raised by the Court *sua sponte*, it may be grounds for *sua sponte* dismissal of an in forma pauperis complaint where the defense is complete and obvious from the face of the pleadings or the court's own records.  Franklin v. Murphy, 745 F.2d 1221, 1228-1230 (9th Cir. 1984).  See Levald, Inc. v. City of Palm Desert, 988 F.2d 680, 686-87 (9th Cir. 1993).  That is the case here – the defense appears complete and obvious from the face of the complaint.

///

Plaintiff's alleges in the First Amended Complaint that Defendants violated his rights during events occurring from February 24, 2011, to August 28, 2011.   Based on these allegations, it appears that the statute of limitations for Plaintiff's injuries began to run, at the latest, on August 28, 2011.   Plaintiff did not file this lawsuit until more than four years later, on September 28, 2015.   Therefore, the court finds that on the face of the complaint, Plaintiff's claims are barred by the statute of limitations.

## V.      CONCLUSION AND ORDER

The court finds that on the face of Plaintiff's First Amended Complaint for this action, his claims are barred by the statute of limitations.   Therefore the court shall issue an order to show cause.   Plaintiff is required to file a response to the order within thirty days, showing why this case should not be dismissed as barred by the statute of limitations.

### <u>ORDER TO SHOW CAUSE</u>

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.      Within thirty days from the date of service of this order, Plaintiff is required to file a response in writing, showing why this case should not be dismissed as barred by the statute of limitations; and

2.      Failure to comply with this order shall result in the dismissal of this case.

IT IS SO ORDERED.

Dated:  __**February 24, 2017**__          _____**/s/ Gary S. Austin**_____
UNITED STATES MAGISTRATE JUDGE