UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE B. HARRIS,<br><br>                 Plaintiff,<br><br>   v.<br><br>HUMBERTO GERMAN, et al.,<br><br>               Defendants. | 1:15-cv-01462-GSA-PC<br><br>**ORDER DETERMINING THAT PLAINTIFF'S COMPLAINT IS NOT BARRED BY STATUTE OF LIMITATIONS**<br><br>**ORDER DISCHARGING COURT'S ORDER TO SHOW CAUSE ISSUED ON FEBRUARY 24, 2017**<br>**(ECF No. 15.)** |

## I. BACKGROUND

Devonte B. Harris ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on September 28, 2015. (ECF No. 1.)

On December 18, 2015, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c), and no other parties have made an appearance. (ECF No. 7.) Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

1

On March 14, 2016, Plaintiff filed the First Amended Complaint. (ECF No. 8.) On February 24, 2017, the court issued an order to show cause, requiring Plaintiff to file a response within thirty days showing why his claims in the First Amended Complaint should not be dismissed as barred by the statute of limitations. (ECF No. 15.) The court reasoned that it appeared on the face of the First Amended Complaint that the four-year statute of limitations for Plaintiff's injuries began to run, at the latest, on August 28, 2011, and Plaintiff did not file this lawsuit until more than four years later, on September 28, 2015. On March 16, 2017, Plaintiff filed his response.[1] (ECF No. 16.)

On March 22, 2017, the court issued an order requiring a further response to the order to show cause. (ECF No. 17.) Plaintiff was ordered to notify the court whether he is serving a life term or a term for less than life. (Id.) On April 7, 2017, Plaintiff filed his response. (ECF No. 19.)

On April 6, 2017, the court issued a second order requiring a further response from Plaintiff. (ECF No. 18.) Plaintiff was ordered to notify the court if he was serving a term for life without the possibility of parole, or life with the possibility of parole.[2] (ECF No. 18.)

## II. PLAINTIFF'S ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), presently incarcerated at California State Prison-Sacramento in Represa, California. The events at issue in the First Amended Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was incarcerated there. Plaintiff brings this civil rights action against defendant prison officials employed by the CDCR at CSP. Plaintiff names as defendants Correctional Officer (C/O) Humberto German, C/O Philip Holguin, C/O Summer Cordova, C/O L. Borgess, C/O R. Womack, C/O D.

---

[1] When a statute of limitations defense shows on the face of the complaint, the burden of alleging facts which would give rise to tolling falls upon the plaintiff. Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993).

[2] See Martinez v. Gomez, 137 F.3d 1124, 1125–26 (9th Cir. 1998) (The plaintiff was entitled to tolling because he was serving "a life sentence with the possibility of parole," which California courts had previously held was a "term less than for life" under California Code of Civil Procedure § 352(a)(3), which was amended by California Code of Civil Procedure § 352.1.)

Lovelady, C/O D. Menzie, C/O D. Botello. C/O S. Pano, C/O R. Leal, C/O R. Burnitzki, Sergeant (Sgt.) J. Martinez, Sgt. W. Rasley, and Sgt. J. Hubbard (collectively, "Defendants").

Plaintiff's allegations follow. On February 24, 2011, Plaintiff was housed in the Security Housing Unit (SHU). At about 1:15 p.m., correctional officers were releasing prisoners to the exercise modules. C/Os German, Holguin, Menzie, Lovelady, and Botello skipped Plaintiff's cell during yard and then ignored him when he called them to ask why. C/O Womack was working in the control booth. C/O German and Holguin came back and released Plaintiff for yard last. Plaintiff stripped out and C/O German kept asking him, "What's the problem?" (ECF No. 8 at 11 ¶9.) C/O German continued to hold Plaintiff's clothing as he stood naked, apparently expecting an answer. Plaintiff said, "I'm done stripping out, can I have my clothes back?" (Id.) Plaintiff got dressed and C/O German handcuffed him. As they escorted Plaintiff to the yard, C/O Holguin placed Plaintiff against the wall by the exit door of the building and began pressing him up against the wall. C/O German said, "You are getting your yard, so what's the problem?" (Id. ¶10.) Plaintiff said that C/O German was pressing him hard into the wall unnecessarily. C/O German said shut up or you are not going to receive yard. Plaintiff said he knows the law and has family who care, so he doesn't care what they do. German said shut up and don't talk. They exited the building and walked towards the yard cages. Sgt. Martinez saw them from the track holding Plaintiff aggressively and asked, "What's going on?" (ECF No. 8 at 12 ¶11.) Plaintiff began to tell him and C/O German jerked Plaintiff to a standstill and said, "I thought I told you not to talk." (Id.) At seeing this Sgt. Martinez said to just escort Plaintiff back to his cell. Upon entering the building, German and Holguin slammed Plaintiff's face into the divider of their office window. Holguin held Plaintiff's face sideways against the window. German kicked Plaintiff's legs apart, making him do the splits. Holguin shouted, "Fuck the law and fuck your family." (Id. ¶12.) German said, "What you wanna do" over and over. (Id.) C/O German threatened to take Plaintiff to the ground. Sgt. Martinez, C/O Menzie, C/O Lovelady, and C/O Botello entered the building. C/O Womack witnessed from the control booth. They did not say or do anything while Holguin had Plaintiff's face pressed against the window and German had Plaintiff's legs unnaturally spread

apart. Plaintiff said he just wanted to go to yard, and German said, "You are not going to yard, so where do you want to go, back to your cell?" (ECF No. 8 at 13 ¶15.) Plaintiff said he wanted to talk to the Lieutenant for an excessive force interview. Martinez said, "You'll get what you got coming, you'll get your excessive force interview." (Id.) German and Holguin escorted Plaintiff back to his cell. Plaintiff suffered knots on his forehead, a swollen cheek, pain in the neck, pain on the right side of his chest, and pain in the small of his back. On February 26, 2011, Sgt. Hubbard interviewed Plaintiff and documented his injuries on video. Sgt. Rasley operated the video camera. Plaintiff was medically evaluated by a nurse. On February 27, 2011, an RN evaluated Plaintiff. On February 29, 2011, another RN evaluated him. At some point, Hubbard and Rasley destroyed the video documenting his injuries while they were still visible on February 26, 2011. Plaintiff filed a prison appeal. On May 16, 2011, two sergeants took another videotaped interview of Plaintiff, but his injuries had already healed. They claimed to have lost the February 26, 2011, video.

On March 10, 2011, C/O German denied Plaintiff his breakfast in retaliation for the excessive force allegations Plaintiff made against him. German refused Plaintiff's inmate request form asking why.

On April 18, 2011, C/O Cordova and C/O Borgess retaliated against Plaintiff for the allegations he made against their coworkers German and Holguin. They denied Plaintiff breakfast and lunch, and then falsified his segregation record, saying they had delivered both meals to Plaintiff. Later that morning, C/O Menzie escorted the nurse. When the nurse delivered Plaintiff's medication, Plaintiff held the food port on his cell and told Menzie he wanted to see the Sergeant about his breakfast and lunch being withheld. He continued escorting the nurse. Holguin came to Plaintiff's cell to see if he wanted to go to a disciplinary hearing. Plaintiff refused because he was holding the food port. Holguin summoned Sgt. Martinez who ordered Holguin to pepper spray Plaintiff to secure the food port. Holguin pepper sprayed Plaintiff and Plaintiff released the food port and went to the middle of his cell, turning his back. Holguin put his pepper spray through the food port and began spraying Plaintiff in the back of his head, neck, and back. Plaintiff suffered severe burning sensations

and chest pain. C/O Borgess and another C/O escorted Plaintiff to the hospital to be evaluated. Borgess and Cordova doctored Plaintiff's segregation records to falsely report that he had refused his breakfast and lunch. Plaintiff was moved to a different housing unit in the SHU.

On August 28, 2011, C/O Holguin and C/O Pano came to Plaintiff's housing unit to escort him to the yard. They conducted an unclothed body search, and then handcuffed Plaintiff behind the back, and they began walking outside toward the yard cages. Holguin told Plaintiff to pull up his boxers, which was impossible because Plaintiff was handcuffed behind his back. Plaintiff told Holguin to pull his eyes up. Holguin then began escorting Plaintiff to the rotunda of his housing unit. There was a cage located there and while guiding Plaintiff into it, Holguin shoved Plaintiff into the wall, causing pain in his shoulder. Holguin then secured the cage and left. C/O Lovelady and C/O Burnitzki walked by and asked Plaintiff what was going on. Plaintiff said that Holguin had used excessive force against him and the Sergeant should be notified. They took no action regarding this matter. Afterward, Holguin came to the rotunda to take Plaintiff back to his cell when yard time was over. Holguin, Burnitzki and C/O Leal took Plaintiff to his cell but did not have the control booth C/O close the cell door. They came all the way into the cell with Plaintiff. Burnitzki and Holguin began pushing Plaintiff back and forth to each other several times. Holguin then pushed Plaintiff into the wall, jammed his left arm into Plaintiff's back, and used his right hand to press Plaintiff's face against the wall, while Burnitzki pulled on the handcuffs from behind. Holguin told Plaintiff, "You're not hit, you are going to stop disrespecting me and I don't care about any lawsuit." (ECF No. 8 at 18 ¶37.) Plaintiff said he did not disrespect him. Holguin was mad because he was under investigation by Internal Affairs for previously using excessive force against Plaintiff. Burnitzki then said, "Internal Affairs are not going to do shit." (Id.) Holguin said next time they are going to really hurt him. Holguin then pulled Plaintiff by the handcuffs to the cell door and took his handcuffs off.

Plaintiff requests monetary and declaratory relief.

///

///

## III. STATUTE OF LIMITATIONS

In federal court, federal law determines when a claim accrues, and "under federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008) (quoting Two Rivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999)). In the absence of a specific statute of limitations, federal courts should apply the forum state's statute of limitations for personal injury actions. Lukovsky, 535 F.3d at 1048; Jones v. Blanas, 393 F.3d 918, 927 (2004); Fink, 192 F.3d at 914. California's two-year statute of limitations for personal injury actions applies to 42 U.S.C. § 1983 claims. See Jones, 393 F.3d at 927. California's statute of limitations for personal injury actions requires that the claim be filed within two years. Cal. Code Civ. Proc., § 335.1.

In actions where the federal court borrows the state statute of limitations, the court should also borrow all applicable provisions for tolling the limitations period found in state law. See Hardin v. Straub, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000 (1989). Under California's Code of Civil Procedure, § 352.1(a), "[i]f a person entitled to bring an action, . . . is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years." Thus, if a prisoner is not serving a life term, he/she is subject to a two-year tolling of the statute of limitations, resulting in a four-year statute of limitations. However, if a prisoner is serving a life term, he/she is not eligible for tolling as a prisoner, and the statute of limitations is only two years.

Although the statute of limitations is an affirmative defense that normally may not be raised by the Court *sua sponte*, it may be grounds for *sua sponte* dismissal of an in forma pauperis complaint where the defense is complete and obvious from the face of the pleadings or the court's own records. Franklin v. Murphy, 745 F.2d 1221, 1228-1230 (9th Cir. 1984). See Levald, Inc. v. City of Palm Desert, 988 F.2d 680, 686-87 (9th Cir. 1993). That is the case here – the defense appears complete and obvious from the face of the complaint.

## IV. PLAINTIFF'S RESPONSES

### A. March 16, 2017, Response

In his response filed on March 16, 2017, Plaintiff argues that the applicable statute of limitations for his case is more than four years because under the Prison Litigation Reform Act, additional time was tolled while he exhausted his administrative remedies. Plaintiff provides evidence that the four-year statute of limitations did not begin to run until at least September 29, 2011, when he exhausted his remedies via two appeals addressing events at issue in this case.

Plaintiff filed three appeals at the prison concerning the claims in this case. The first two appeals were exhausted to the final level of review on September 29, 2011. (ECF No. 16, Exhibits A & B.) The third appeal was exhausted to the final level of review on March 13, 2012. (Id., Exhibit C.) Plaintiff argues that because the statute of limitations tolled while he was exhausting his remedies, he had at least until September 29, 2015 to file this lawsuit, and he timely filed this lawsuit on September 28, 2015.

Plaintiff submits the three appeals as evidence. The first appeal, log no. COR-11-01080, concerned Plaintiff's allegation that he was being harassed by 4A2R staff, and that on February 24, 2011, C/O H. German and C/O P. Holquin slammed him into the wall and kicked his legs apart to a point where he could not spread them further. Plaintiff also alleged that C/O German refused to give him his morning meal on March 10, 2011. This appeal was exhausted on September 29, 2011.

The second appeal, COR-11-01324, concerned Plaintiff's allegation that on April 18, 2011, he was not given his morning meal and was subjected to excessive force by C/O P. Holguin. Plaintiff also alleged that on April 18, 2011, his food port was left open due to the morning medication pass. C/O Holquin approached his cell and asked him to exit the cell for a hearing, but Plaintiff refused. Sergeant J. Martinez ordered C/O Holquin to apply pepper spray to Plaintiff, which he did. This appeal was exhausted on September 29, 2011.

The third appeal, COR-11-02460, concerned Plaintiff allegation that C/O Holquin used excessive force on him on August 28, 2011. During an escort, C/O Holquin pushed Plaintiff

against the wall of his cell and told him to stop making disrespectful comments about him. Plaintiff claims his shoulder was hurt when he was pushed against the wall. Later, C/O Holquin and C/O Burnitzky pushed him towards each other several times, which resulted in C/O Holquin pushing Plaintiff's face against the wall and C/O Burnitzky pulled on Plaintiff's hands while handcuffed. This appeal was exhausted on March 13, 2012.

### B. April 7, 2017 Response

In his April 7, 2017 response, Plaintiff notified the court that he is serving a term of 7 years to life with the possibility of parole, plus 13 years and 8 months. Plaintiff provides as evidence an Abstract of Judgment filed on November 16, 2001, at the Los Angeles County Superior Court. (ECF No. 19, Exh. A.)

### V. DISCUSSION

Plaintiff has provided evidence that he is not currently serving a life term without the possibility of parole. Therefore, under § 352.1(a) of California's Code of Civil Procedure, he is subject to a two-year tolling of the statute of limitations, resulting in a four-year statute of limitations.

Plaintiff's argument that he is entitled to equitable tolling during the time he was exhausting his administrative remedies has merit. The Ninth Circuit has recognized that prisoners relying on the California statute of limitations are entitled to equitable tolling of the statute of limitations while completing the mandatory exhaustion process. See Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005). "Where exhaustion of an administrative remedy is mandatory prior to filing suit, equitable tolling is automatic: 'It has long been settled in this and other jurisdictions that whenever the exhaustion of administrative remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is tolled during the time consumed by the administrative proceeding.'" McDonald v. Antelope Valley Cmty. Coll. Dist., 45 Cal. 4th 88, 101, 194 P.3d 1026, 1032 (2008) (quoting Elkins v. Derby, 12 Cal.3d 410, 414, 115 Cal.Rptr. 641, 525 P.2d 81; cf. Code Civ. Proc., § 356 [tolling applies whenever commencement of an action is statutorily prohibited]).

///

Therefore, Plaintiff is entitled to equitable tolling of the statute of limitations while completing the mandatory exhaustion process. Plaintiff's evidence shows that he did not finish exhausting his remedies for allegations in this lawsuit until September 29, 2011, at the earliest, and he filed this lawsuit less than four years later, on September 28, 2015. Because this lawsuit was filed before his statute of limitations expired, Plaintiff's claims in the First Amended Complaint are not barred by the statute of limitations, and Plaintiff may proceed with this lawsuit. The court's order to show cause issued on February 24, 2017, shall be discharged.

## VI. CONCLUSION

The court finds that Plaintiff's claims in the First Amended Complaint are not barred by the statute of limitations.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's claims in the First Amended Complaint are not barred by the statute of limitations;
2. The court's order to show cause, issued on February 24, 2017, is DISCHARGED; and
3. The court shall screen the First Amended Complaint in due course.

IT IS SO ORDERED.

Dated: **May 8, 2017**        **/s/ Gary S. Austin**
                              UNITED STATES MAGISTRATE JUDGE