# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE B. HARRIS,<br><br>    Plaintiff,<br><br> v.<br><br>HUMBERTO GERMAN, et al.,<br><br>    Defendants. | 1:15-cv-01462-GSA-PC<br><br>**ORDER FINDING COGNIZABLE CLAIMS**<br>**(ECF No. 8.)**<br><br>**ORDER FOR PLAINTIFF TO EITHER:**<br><br> **(1) FILE AN AMENDED COMPLAINT, OR**<br><br> **(2) NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY WITH COGNIZABLE EXCESSIVE FORCE AND RETALIATION CLAIMS**<br><br>**THIRTY DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED WITH COGNIZABLE CLAIMS** |

## I. BACKGROUND

Devonte B. Harris ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on September 28, 2015. (ECF No. 1.)

On December 18, 2015, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c), and no other parties have made an appearance. (ECF No. 7.) Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of

1

California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

On March 14, 2016, Plaintiff filed the First Amended Complaint. (ECF No. 8.) On February 24, 2017, the court issued an order for Plaintiff to show cause why this case should not be dismissed as barred by the applicable statute of limitations. (ECF No. 15.) Plaintiff responded to the order on March 16, 2017, and April 7, 2017. (ECF Nos. 16, 19.) On May 9, 2017, the court issued an order determining that Plaintiff's complaint is not barred by the statute of limitations, and discharging the order to show cause. (ECF No. 20.)

Plaintiff's First Amended Complaint is now before the court for further screening.

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as

true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

**III.   PLAINTIFF'S ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**

Plaintiff is presently a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), incarcerated at California State Prison-Sacramento in Represa, California. The events at issue in the First Amended Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was incarcerated there. Plaintiff brings this civil rights action against defendant prison officials employed by the CDCR at CSP. Plaintiff names as defendants Correctional Officer (C/O) Humberto German, C/O Philip Holguin, C/O Summer Cordova, C/O L. Borgess, C/O R. Womack, C/O D. Lovelady, C/O D. Menzie, C/O D. Botello, C/O S. Pano, C/O R. Leal, C/O R. Burnitzki, Sergeant (Sgt.) J. Martinez, Sgt. W. Rasley, and Sgt. J. Hubbard (collectively, "Defendants").

Plaintiff's allegations follow. On February 24, 2011, Plaintiff was housed in the Security Housing Unit (SHU). At about 1:15 p.m., C/Os were releasing prisoners to the exercise modules. C/Os German, Holguin, Menzie, Lovelady, and Botello skipped over Plaintiff's cell during yard and then ignored him when he called to them to ask why. C/O Womack was working in the control booth. C/Os German and Holguin came back and released Plaintiff after everyone else had been released. Plaintiff stripped out and C/O German kept asking him, "What's the problem?" (ECF No. 8 at 11 ¶9.) C/O German continued to hold Plaintiff's clothing as Plaintiff stood naked, apparently expecting an answer. Plaintiff said, "I'm done stripping out, can I have my clothes back?" (Id.) Plaintiff got dressed and C/O German handcuffed him. As they escorted Plaintiff to the yard, C/O Holguin placed Plaintiff against the wall by the exit door of the building and began pressing him up against the wall. C/O German said, "You are getting your yard, so what's the problem?" (Id. ¶10.) Plaintiff said that C/O Holguin was pressing him hard into the wall unnecessarily. C/O German said to shut up or he was not going to receive yard time. Plaintiff said he knows the law and has family who care, so he doesn't care what they do. C/O German said shut up and don't talk. They exited the building and walked toward the yard cages. Sgt. Martinez saw them from the track

3

holding Plaintiff aggressively and asked, "What's going on?" (ECF No. 8 at 12 ¶11.) Plaintiff began to tell him and C/O German jerked Plaintiff to a standstill and said, "I thought I told you not to talk." (Id.) At seeing this, Sgt. Martinez said to just escort Plaintiff back to his cell. Upon entering the building, C/Os German and Holguin slammed Plaintiff's face into the divider of their office window. C/O Holguin held Plaintiff's face sideways against the window. C/O German kicked Plaintiff's legs apart, making him do the splits. Holguin shouted, "Fuck the law and fuck your family." (Id. ¶12.) German said, "What you wanna do?" over and over. (Id.) C/O German threatened to take Plaintiff to the ground. Sgt. Martinez, C/O Menzie, C/O Lovelady, and C/O Botello entered the building. C/O Womack witnessed from the control booth. They did nothing nor said nothing while Holguin had Plaintiff's face pressed against the window and German had Plaintiff's legs unnaturally spread apart. Plaintiff said he just wanted to go to yard, and German said, "You are not going to yard, so where do you want to go, back to your cell?" (ECF No. 8 at 13 ¶15.) Plaintiff said he wanted to talk to the lieutenant for an excessive force interview. Martinez said, "You'll get what you got coming, you'll get your excessive force interview." (Id.) C/Os German and Holguin escorted Plaintiff back to his cell. Plaintiff suffered knots on his forehead, a swollen cheek, pain in the neck, pain on the right side of his chest, and pain in the small of his back.

On February 26, 2011, Sgt. Hubbard interviewed Plaintiff and documented his injuries on video. Sgt. Rasley operated the video camera. Plaintiff was medically evaluated by a nurse. On February 27, 2011, an RN evaluated Plaintiff. On February 29, 2011, another RN evaluated him. At some point, Sergeants Hubbard and Rasley destroyed the video documenting Plaintiff's injuries while the injuries were still visible on February 26, 2011. Plaintiff filed a prison appeal. On May 16, 2011, two sergeants took another videotaped interview of Plaintiff, but his injuries had already healed. They claimed to have lost the February 26, 2011 video.

On March 10, 2011, C/O German denied Plaintiff his breakfast in retaliation for the excessive force allegations Plaintiff made against him. C/O German refused to take Plaintiff's inmate request form asking why.

///

On April 18, 2011, C/Os Cordova and Borgess retaliated against Plaintiff for the allegations he made against their coworkers German and Holguin. They denied Plaintiff breakfast and lunch, and then falsified his segregation record, saying they had delivered both of the meals to Plaintiff. Later that morning, C/O Menzie escorted the nurse. When the nurse delivered Plaintiff's medication, Plaintiff held the food port on his cell and told C/O Menzie he wanted to see the sergeant about his breakfast and lunch being withheld. C/O Menzie continued escorting the nurse. C/O Holguin came to Plaintiff's cell to see if he wanted to go to a disciplinary hearing. Plaintiff refused because he was holding the food port. C/O Holguin summoned Sgt. Martinez who ordered C/O Holguin to pepper spray Plaintiff to secure the food port. C/O Holguin pepper sprayed Plaintiff and Plaintiff released the food port and went to the middle of his cell, turning his back. C/O Holguin put his pepper spray through the food port and began spraying Plaintiff in the back of his head, neck, and back. Plaintiff suffered severe burning sensations and chest pain. C/O Borgess and another C/O escorted Plaintiff to the hospital to be evaluated. C/Os Borgess and Cordova falsified Plaintiff's segregation records, reporting that Plaintiff had refused his breakfast and lunch. Plaintiff was moved to a different housing unit in the SHU.

On August 28, 2011, C/Os Holguin and Pano came to Plaintiff's housing unit to escort him to the yard. They conducted an unclothed body search, handcuffed Plaintiff behind his back, and began walking outside toward the yard cages. C/O Holguin told Plaintiff to pull up his boxers, which was impossible because Plaintiff was handcuffed behind his back. Plaintiff told C/O Holguin to pull his eyes up. C/O Holguin then began escorting Plaintiff to the rotunda of his housing unit. There was a cage located there and while guiding Plaintiff into it, C/O Holguin shoved Plaintiff into the wall, causing pain in his shoulder. C/O Holguin then secured the cage and left. C/Os Lovelady and Burnitzki walked by and asked Plaintiff what was going on. Plaintiff said that C/O Holguin had used excessive force against him and the sergeant should be notified. They took no action regarding this matter. Afterward, C/O Holguin came to the rotunda to take Plaintiff back to his cell when yard time was over. C/Os Holguin, Burnitzki, and Leal took Plaintiff to his cell but did not have the control booth C/O close the

cell door. They came all the way into the cell with Plaintiff. C/Os Burnitzki and Holguin began pushing Plaintiff back and forth to each other several times. C/O Holguin then pushed Plaintiff into the wall, jammed his left arm into Plaintiff's back, and used his right hand to press Plaintiff's face against the wall, while C/O Burnitzki pulled on the handcuffs from behind. C/O Holguin told Plaintiff, "You're not shit, you are going to stop disrespecting me and I don't care about any lawsuit." (ECF No. 8 at 18 ¶37.) Plaintiff said he did not disrespect him. Holguin was mad because he was under investigation by internal affairs for previously using excessive force against Plaintiff. C/O Burnitzki then said, "Internal affairs are not going to do shit." (Id.) Holguin said next time they are going to really hurt Plaintiff. C/O Holguin then pulled Plaintiff by the handcuffs to the cell door and took his handcuffs off.

Plaintiff requests monetary damages and declaratory relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the

meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Excessive Force – Eighth Amendment Claim

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and

unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The court finds that Plaintiff states cognizable claims for use of excessive force against defendants Holguin, German, and Burnitzki.

### B. Failure to Protect – Eighth Amendment Claim

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer v. Brennan, 511 U.S. 825, 833 (1970); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.

8

1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). An officer can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

Plaintiff claims that on February 24, 2011, defendants Martinez, Lovelady, Menzie, Womack, and Botello failed to intervene when they observed that defendant Holguin had Plaintiff's face pressed against the window and defendant German had Plaintiff's legs unnaturally spread apart. However, Plaintiff fails to allege facts causing the court to infer that the "observing defendants" knew that Plaintiff was at a substantial risk of serious harm, deliberately ignored the risk of harm, had a realistic opportunity to intercede, and unreasonably failed to intercede. Here, it does not appear obvious that the "observing defendants" would know that Plaintiff was at a substantial risk of serious harm because his legs were spread apart and his face was being held against a window. Therefore, Plaintiff fails to state a cognizable claim against the "observing defendants" for failing to protect him on February 24, 2011.

Plaintiff claims that on April 18, 2011, defendant Martinez failed to intervene when defendant Holguin used excessive force against Plaintiff. Plaintiff's only allegation against defendant Martinez on April 18, 2011, is that Martinez ordered Holguin to pepper spray Plaintiff to secure the food port that Plaintiff was holding open. This is not sufficient to state a claim against defendant Martinez for failure to protect Plaintiff.

Plaintiff also claims that on August 28, 2011, defendants Pano, Burnitzki, Lovelady, and Leal failed to intercede when defendants Burnitzki and Holguin subjected Plaintiff to excessive force. Plaintiff's only allegation against Pano is that Pano assisted Holguin in escorting Plaintiff from his cell to the yard. This is not sufficient to state a claim against defendant Pano for failing to protect Plaintiff.

Plaintiff alleges that defendants Lovelady and Burnitzki walked by the cage where Plaintiff was secured and asked Plaintiff what was going on, and when Plaintiff told them that

C/O Holguin had used excessive force against him and asked them to notify the sergeant, they took no action. This is not sufficient to state a claim against defendants Lovelady and Burnitzki for failing to protect him on August 28, 2011.

Plaintiff alleges that defendant Leal came into Plaintiff's cell with defendants Burnitzki and Holguin before defendants Burnitzki and Holguin used force against Plaintiff. However, there are no facts to cause the court to infer that Leal knew Plaintiff was at substantial risk of serious harm, consciously disregarded the risk, and had a realistic opportunity to intercede. Therefore, Plaintiff fails to state a claim against defendant Leal for failing to protect him on August 28, 2011.

Based on the above, Plaintiff fails to state an Eighth Amendment claim against any of the Defendants for failing to protect him.

### C. Retaliation – First Amendment Claim

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under § 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482

///

(1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Liberally construed, Plaintiff states a cognizable claim for retaliation against defendant Holguin, for using force against Plaintiff because Plaintiff previously filed grievances against Holguin. However, Plaintiff fails to satisfy all five of the required elements discussed above to state a retaliation claim against any of the other Defendants. Plaintiff alleges no adverse action against him by defendants Pano, Leal, or Lovelady. Plaintiff alleges no facts showing a connection between the adverse actions taken by defendants German, Cordova, Borgess, or Burnitzki and the appeals or cases filed by Plaintiff. Plaintiff must allege *facts* demonstrating that the adverse actions were taken *because* of the appeals or cases. A conclusory statement that an action was taken because of Plaintiff's appeals, without supporting facts, is not enough. Also, Plaintiff is reminded that he must demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808. Plaintiff shall be granted leave to amend the complaint, if he wishes, to cure these deficiencies.

Accordingly, the court finds that Plaintiff only states a cognizable retaliation claim against defendant Holguin, but not against any other Defendant.

### D. False Reports – Due Process

Plaintiff alleges that some of the Defendants falsified records after they denied him his breakfast and lunch, reporting that they delivered both of the meals to Plaintiff but he refused them. These allegations, even if true, do not raise a constitutional claim because there is no due process right to be free from false reports or accusations. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989*);* Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and

11

incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff fails to state a due process claim for the false reports.

### E. **Destruction of Video – First Amendment**

Under the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Prisoners retain First Amendment rights, but these rights are restricted in prison. Pell v. Procunier, 417 U.S. 817, 822 (1974); accord, Hrdlicka v. Reniff, 631 F.3d 1044, 1048 (9th Cir. 2011).

Plaintiff brings a First Amendment claim against defendants Rasley and Hubbard for destroying a video containing evidence of Plaintiff's injuries, although these defendants claim they lost the video. This allegation, without more, fails to state a claim under § 1983 upon which relief may be granted. Moreover, Plaintiff does not indicate which of his First Amendment rights he believes were violated by defendants Rasley and Hubbard.

Therefore, Plaintiff fails to state a First Amendment claim against defendants Rasley and Hubbard for destroying the video.

### V. **CONCLUSION AND ORDER**

For the reasons set forth above, the court finds that Plaintiff states cognizable claims against defendants Holguin, German, and Bunitzki for use of excessive force in violation of the Eighth Amendment, and against defendant Holguin for retaliation in violation of the First Amendment. However, Plaintiff fails to state any other claims against Defendants upon which relief may be granted under § 1983. Plaintiff shall be required to either file a Second Amended Complaint, or notify the court of his willingness to proceed only on the cognizable excessive force and retaliation claims. Should Plaintiff choose to proceed only on the cognizable claims,

///

the court will begin the process to initiate service upon defendants Holguin, German, and Bunitzki by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above. Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on September 28, 2015.

If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   (1) File a Second Amended Complaint curing the deficiencies identified in this order, or
   (2) Notify the court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the excessive force claims against defendants Holguin, German, and Bunitzki, and the retaliation claim against defendant Holguin;
3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:15-cv-01462-GSA-PC; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated: **September 8, 2017**                **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE