UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE HARRIS,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>HUMBERTO GERMAN, et al.,<br><br>　　　　Defendants. | 1:15-cv-01462-DAD-GSA-PC<br><br>**ORDER AND FINDINGS AND RECOMMENDATIONS**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO WITHDRAW ADMISSIONS**<br>**(ECF No. 49.)**<br><br>**ORDER VACATING DECEMBER 26, 2018 SCHEDULING ORDER**<br>**(ECF No. 54.)**<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED WITHOUT PREJUDICE**<br>**(ECF Nos. 44.)**<br><br>**OBJECTIONS TO FINDINGS AND RECOMMENDATIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

**I.　BACKGROUND**

Devonte Harris ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with the First Amended Complaint filed by Plaintiff on March 14, 2016, against defendants Correctional Officer (C/O) Humberto German, C/O Philip Holguin, and C/O R. Burnitzki (collectively, "Defendants"), for use of excessive force in violation of the Eighth Amendment; and against

defendant C/O Philip Holguin for retaliation in violation of the First Amendment. (ECF No. 8.)

On March 19, 2018, the court issued a discovery and scheduling order opening discovery and setting out deadlines including a discovery deadline of August 19, 2018, and a dispositive motions deadline of October 18, 2018. (ECF No. 37.) On September 21, 2018, the court reopened discovery and set a new discovery deadline of November 30, 2018, and a new dispositive motions deadline of January 30, 2019. (ECF No. 43.) On December 26, 2018, the court extended the discovery deadline to January 29, 2019, and the dispositive motions deadline to March 30, 2019. (ECF No. 54.)

On October 15, 2018, Defendants filed a motion for summary judgment. (ECF No. 44.) On December 20, 2018, Plaintiff filed an opposition to the motion for summary judgment. (ECF No. 52.) On December 27, 2018, Defendants filed a reply to Plaintiff's opposition. (ECF No. 55.) The motion for summary judgment is pending.

On November 19, 2018, Plaintiff filed a motion to withdraw his admissions. (ECF No. 49.) On December 7, 2018, Defendants filed an opposition to the motion to withdraw. (ECF No. 51.) On December 21, 2018, Plaintiff filed a reply to Defendants' opposition. (ECF No. 53.)

Plaintiff's motion to withdraw admissions, and Defendants' motion for summary judgment, are now before the court. Local Rule 230(*l*).

II. **PLAINTIFF'S ALLEGATIONS AT ISSUE**

On February 24, 2011, Plaintiff was housed in the Security Housing Unit at Corcoran State Prison. At about 1:15 p.m., C/Os were releasing prisoners to the exercise modules. C/Os German, Holguin, Menzie [not a defendant], Lovelady [not a defendant], and Botello [not a defendant] skipped Plaintiff's cell during yard and then ignored him when he called them to ask why. C/O Womack [not a defendant] was working in the control booth. C/Os German and Holguin came back and released Plaintiff for yard last. Plaintiff stripped out and C/O German kept asking him, "What's the problem?" C/O German continued to hold Plaintiff's clothing as he stood naked, apparently expecting an answer. Plaintiff said, "I'm done stripping out, can I

have my clothes back?" Plaintiff got dressed and C/O German handcuffed him. As they escorted Plaintiff to the yard, C/O Holguin placed Plaintiff against the wall by the exit door of the building and began pressing him up against the wall. C/O German said, "You are getting your yard, so what's the problem?" Plaintiff said that C/O Holguin was pressing him hard into the wall unnecessarily. C/O German said shut up or you are not going to receive yard. Plaintiff said he knows the law and has family who care, so he doesn't care what they do. German said shut up and don't talk. They exited the building and walked towards the yard cages. Sergeant Martinez [not a defendant] saw them from the track holding Plaintiff aggressively and asked, "What's going on?" Plaintiff began to tell him and C/O German jerked Plaintiff to a standstill and said, "I thought I told you not to talk." At seeing this, Sgt. Martinez said to just escort Plaintiff back to his cell.

Upon entering the building, German and Holguin slammed Plaintiff's face into the divider of their office window. Holguin held Plaintiff's face sideways against the window. German kicked Plaintiff's legs apart making him do the splits. Holguin shouted, "Fuck the law and fuck your family." German said, "What you wanna do" over and over. C/O German threatened to take Plaintiff to the ground. Sgt. Martinez, C/O Menzie, C/O Lovelady, and C/O Botello entered the building. C/O Womack witnessed from the control booth. They did nothing while Holguin had Plaintiff's face pressed against the window and German had Plaintiff's legs unnaturally spread apart. Plaintiff said he just wanted to go to yard and German said, "You are not going to yard, so where do you want to go, back to your cell?" Plaintiff said he wanted to talk to the lieutenant for an excessive force interview. Martinez said, "You'll get what you got coming, you'll get your excessive force interview." German and Holguin escorted Plaintiff back to his cell. Plaintiff suffered knots on his forehead, a swollen cheek, pain in his neck, pain on the right side of his chest, and pain in the small of his back.

On February 26, 2011, Sgt. Hubbard [not a defendant] interviewed Plaintiff and documented his injuries on video. Sgt. Rasley [not a defendant] operated the video camera. Plaintiff was medically evaluated by a nurse.

///

On February 27, 2011, an RN evaluated Plaintiff. On February 29, 2011, another RN evaluated him.

At some point, Hubbard and Rasley destroyed the video documenting Plaintiff's injuries while they were still visible on February 26, 2011. Plaintiff filed a prison appeal. On May 16, 2011, two sergeants took another videotaped interview of Plaintiff, but his injuries had already healed. They claimed to have lost the February 26, 2011 video.

On March 10, 2011, C/O German denied Plaintiff his breakfast and refused Plaintiff's inmate request form asking why.

On April 18, 2011, C/O Cordova [not a defendant] and C/O Borgess [not a defendant] denied Plaintiff breakfast and lunch, and then falsified his segregation record saying they had delivered both meals to Plaintiff. Later that morning, C/O Menzie escorted the nurse. When the nurse delivered Plaintiff's medication Plaintiff held the food port on his cell and told Menzie he wanted to see the sergeant about his breakfast and lunch being withheld. Menzie continued escorting the nurse. Holguin came to Plaintiff's cell to see if he wanted to go to a disciplinary hearing. Plaintiff refused because he was holding the food port. Holguin summoned Sgt. Martinez who ordered Holguin to pepper spray Plaintiff to secure the food port. Holguin pepper sprayed Plaintiff and Plaintiff released the food port and went to the middle of his cell, turning his back. Holguin put his pepper spray through the food port and began spraying Plaintiff in the back of his head, neck, and back. Plaintiff suffered severe burning sensations and chest pain. Borgess and another C/O escorted Plaintiff to the hospital to be evaluated. Borgess and Cordova doctored Plaintiff's segregation records to falsely report that he had refused his breakfast and lunch. Plaintiff was moved to a different housing unit in the SHU.

On August 28, 2011, C/O Holguin and C/O Pano [not a defendant] came to Plaintiff's housing unit to escort him to the yard. They conducted an unclothed body search, handcuffed Plaintiff behind his back and began walking outside toward the yard cages. Holguin told Plaintiff to pull up his boxers, which was impossible because Plaintiff was handcuffed behind his back. Plaintiff told Holguin to pull his eyes up. Holguin then began escorting Plaintiff to

the rotunda of his housing unit. There was a cage located there and while guiding Plaintiff into it, Holguin shoved Plaintiff into the wall causing pain in Plaintiff's shoulder. Holguin then secured the cage and left. C/O Lovelady and C/O Burnitzki walked by and asked Plaintiff what was going on. Plaintiff said that Holguin had used excessive force against him and the sergeant should be notified. They took no action regarding this matter. Afterwards, Holguin came to the rotunda to take Plaintiff back to his cell when yard time was over. Holguin, Burnitzki, and C/O Leal took Plaintiff to his cell but did not have the control booth C/O close the cell door. They came all the way into the cell with Plaintiff. Burnitzki and Holguin began pushing Plaintiff back and forth to each other several times. Holguin then pushed Plaintiff into the wall, jammed his left arm into Plaintiff's back and used his right hand to press Plaintiff's face against the wall while Burnitzki pulled on the handcuffs from behind. Holguin told Plaintiff, "You're not shit, you are going to stop disrespecting me and I don't care about any lawsuit." Plaintiff said he did not disrespect him. Holguin was mad because he was under investigation by internal affairs for previously using excessive force against Plaintiff. Burnitzki then said, "Internal affairs are not going to do shit." Holguin said next time they are going to really hurt him. Holguin then pulled Plaintiff by the handcuffs to the cell door and took his handcuffs off.

Plaintiff requests monetary and declaratory relief.

### III. PLAINTIFF'S CLAIMS

Under the legal standards that follow, the court found that Plaintiff states cognizable claims in the First Amended Complaint against defendants Holguin, German, and Burnitzki, for use of excessive force in violation of the Eighth Amendment; and against defendant Holguin for retaliation in violation of the First Amendment.

#### A. <u>42 U.S.C. § 1983</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

**B.**     **Excessive Force – Eighth Amendment Claim**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not

significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### C.  Retaliation -- First Amendment Claim

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

///

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under § 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

## IV. PLAINTIFF'S MOTION TO WITHDRAW ADMISSIONS

### A. Legal Standards

Federal Rule of Civil Procedure 36(a) states that a matter is admitted "unless, within 30 days after being served, the party to whom the request is directed serves . . . a written answer or objection." Fed. R. Civ. P. 36(a)(3). Once admitted, the matter is "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

Rule 36(b) states, in relevant part:

> [T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Fed. R. Civ. P. 36(b).

Rule 36(b) presents a permissive standard, and whether a party is entitled to relief in the form of withdrawal or amendment of responses to requests for admissions lies within the discretion of the district court. Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007). District courts are permitted "to exercise [their] discretion to grant relief from an admission made under Rule 36(a) only when (1) the presentation of the merits of the action will be subserved, and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Id. (internal citations omitted). Both prongs of this test must be considered in resolving a motion to withdraw admissions. Id. at 622. "The first half of the test in Rule 36(b)

is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." Id. (quoting Hadley v. United States, 45 F.3d 1345, 1348 (1995)). As to the second half of this test, the court focuses on "the prejudice that the nonmoving party would suffer at trial." Conlon, 474 F.3d at 623. "The party relying on the deemed admission has the burden of proving prejudice." Id. at 622. A district court may also "consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits." Id. at 625.

**B.     Parties' Positions**

Plaintiff argues that he was not able to timely respond to Defendants' Requests for Admissions because he was transferred from Corcoran State Prison to California State Prison-Sacramento on October 9, 2018, for criminal proceedings and did not have access to his property or the law library throughout the initial discovery period. Plaintiff has yet to be transferred back to Corcoran State Prison. Plaintiff claims that Defendants' coworkers are obstructing his ability to litigate this case with transfers and deprivation of his property.

In opposition, Defendants argue that Plaintiff elected not to respond to their discovery, including their Requests for Admissions served upon Plaintiff in May 2018, and has not served any responses to any of their outstanding discovery nor corresponded with defense counsel regarding his failure to respond. Defendants argue that they would be prejudiced if Plaintiff is allowed to withdraw his admissions with no evidence that proper responses will follow.

In reply, Plaintiff argues that the admissions at issue contradict the material facts in his complaint. Plaintiff contends that Defendants will not be prejudiced by withdrawal of his admissions because Defendants have Plaintiff's deposition testimony, which addresses all of the issues related to their discovery requests and the documents he produced at that deposition. Attached to Plaintiff's reply are Plaintiff's tardy responses, dated December 12, 2018, to all of Defendants' Requests for Admissions. (ECF No. 53 at 9-24.) Plaintiff claims that he only possesses the Requests for Admissions because they were enclosed in Defendants' motion for summary judgment which he received while out to court at California State Prison-Sacramento. In response to Defendants' concern that they will never receive proper discovery responses

from Plaintiff, Plaintiff claims that he is a victim of staff dysfunction and once his property is forwarded to him he will make good faith efforts to vindicate his constitutional rights.

**C.** **Discussion**

As discussed above, district courts are permitted "to exercise [their] discretion to grant relief from an admission made under Rule 36(a) only when (1) the presentation of the merits of the action will be subserved, and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Id. (internal citations omitted).

**1.** **Presentation of the Merits**

Defendants concede that upholding Plaintiff's admissions would practically eliminate any presentation of the merits of the case where, as here, a motion for summary judgment has been brought based on the deemed admissions, see Conlon, 474 U.S. at 622. Therefore, the first half of the test in Rule 36(b) is satisfied.

**2.** **Prejudice to Defendants**

Defendants argue that they would be prejudiced by withdrawal of the admissions because Plaintiff completely failed to provide any discovery responses whatsoever in response to Defendants' discovery requests, including the Requests for Admissions. Defendants contend that if Plaintiff is permitted to withdraw the deemed admissions there is simply no indication from Plaintiff's past behavior that Defendants will ever obtain any responses to their valid and reasonable discovery requests.

Defendants' arguments are unpersuasive. See Lyons v. Santoro, 2011 WL 3353890 at *3 (C.D.Cal. May 11, 2011) ("It would be difficult for Defendants to contend they were prejudiced because Plaintiff failed to timely respond to requests asking him to admit that the allegations in his Complaint were untrue.") Defendants argue that they may never receive responses to their discovery. However, lack of discovery, without more, does not constitute prejudice, Conlon, 474 F.3d at 624, and in this case, Defendants have Plaintiff's deposition testimony and documents received at the deposition. In addition, Plaintiff's complaint is

verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

If the admissions are withdrawn and the action proceeds following resolution of the outstanding motions, Defendants will not be foreclosed from pursuing discovery in this action. Defendants have not demonstrated that they would suffer prejudice at trial based on the withdrawal of admissions. Conlon, 474 F.3d 621-22. This is not a motion for withdrawal made in the middle of trial when courts are more likely to find prejudice. See Hadley, 45 F.3d at 1348. Here, discovery is still open, the dispositive motions deadline has not expired, and no trial has been scheduled. Moreover, to minimize any prejudice to Defendants, the court shall vacate the December 26, 2018, scheduling order, with dates to be reset after the district court's ruling on their motion for summary judgment.

For these reasons, the court finds that Defendants have not demonstrated that they will be prejudiced in maintaining or defending this action on the merits or at trial if Plaintiff's admissions are withdrawn. Therefore, Plaintiff's motion to withdraw his admissions shall be granted.

## V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.

///

Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**B.    Defendants' Undisputed Facts (UF)**

Defendants submitted the following facts in support of their motion for summary judgment. (ECF No. 44-3.)

1. At all times relevant to his complaint, Plaintiff was an inmate housed at California State Prison – Corcoran (COR) in Corcoran, California. (ECF No. 8; Declaration of Lucas L. Hennes, Ex. A at 2.)

2. Plaintiff has never been assaulted by staff at COR. (Declaration of Lucas L. Hennes, Ex. A at 3; Ex. B at 3; Ex. C. at 3.)

3. Plaintiff suffered no physical injuries as a result of the alleged conduct by Defendants on February 24, 2011. (Declaration of Lucas L. Hennes, Ex. A at 2.)

4. On April 18, 2011, Plaintiff was holding his food port open in protest. (Declaration of Lucas L. Hennes, Ex. D at 50:25 – 51:15.)

5. On April 18, 2011, Defendant Holguin was ordered by Sergeant Martinez to use pepper spray on Plaintiff to secure his food port. (Declaration of Lucas L. Hennes, Ex. D at 53:22-25.)

6. Aside from using pepper spray, Defendant Holguin used no other force on Plaintiff on April 18, 2011. (UF No. 6.)

7. Plaintiff suffered no physical injuries as a result of the alleged conduct by Defendants on August 28, 2011. (Declaration of Lucas L. Hennes, Ex. B at 3; Ex. C at 3.)

**C.** **Discussion**

Defendants argue that they are entitled to summary judgment on the excessive force claims against them based on Plaintiff's deemed admissions and selected deposition testimony, (Declaration of Lucas L. Hennes, ECF No. 44-4, Exhibits A-D). Defendants assert that Plaintiff admitted that he did not suffer any physical injuries as a result of the alleged actions against him, there were no witnesses to the alleged assaults, he has never been assaulted by staff at CSP-Corcoran, and he was not seen by medical staff on February 27, 2011 or February 29, 2011. (Id., Exhibits A-C.) Plaintiff testified at his June 6, 2018, deposition that he was holding the food port to his cell in protest, that Sgt. Martinez ordered Officer Holguin to use

///

pepper spray on Plaintiff to secure the food port, and that Plaintiff released the food port when Officer Holguin sprayed him. (Id., Exh. D, Depo. at 23:25-24:7, 53:22-54:13.)

Defendants also argue that defendant Holguin is entitled to qualified immunity for his conduct in April 2011.

### 1. **Excessive Force Claims**

**Claims Arising in February and August 2011**

The court finds that Defendants' arguments are without merit now that Plaintiff's admissions have been withdrawn, and Defendants have not shown that there is no genuine dispute as to any material fact in this case. Therefore, summary judgment on Plaintiff's excessive force claims arising on February and August 2011 must be denied.

**Claims Arising in April 2011**

Defendants argue that to the extent that Plaintiff's excessive force claim arising in April 2011 survived screening, defendant Holguin is entitled to qualified immunity because it was not clearly established that following a superior officer's orders to use pepper spray on an inmate to secure a food port would violate that inmate's constitutional rights. However, Defendants fail to address Plaintiff's allegation that defendant Holguin used pepper spray against Plaintiff after Plaintiff had released the food port and gone to the middle of his cell, turning his back. Plaintiff alleges that *after the food port was secured*, C/O Holguin put his pepper spray through the food port and began spraying Plaintiff in the back of his head, neck, and back, causing Plaintiff to suffer severe burning sensations and chest pain. Therefore, Defendants' motion for qualified immunity for defendant Holguin for his conduct in April 2011, must be denied.

### 2. **Retaliation Claim -- August 28, 2011 -- Defendant Holguin**

Defendants have not addressed Plaintiff's retaliation claim against defendant Holguin in their motion for summary judgment. Therefore, summary judgment on Plaintiff's retaliation claim must be denied.

///

///

## VI. CONCLUSION, ORDER, AND RECOMMENDATIONS

Defendants filed their motion for summary judgment on October 15, 2018, before receiving responses from Plaintiff to their interrogatories and requests for production of documents. As Plaintiff's motion to withdraw his admissions is being granted herein, Defendants presumably will want to conduct additional discovery and, if appropriate, seek summary judgment on that basis. The undersigned will therefore recommend that Defendants' motion for summary judgment be denied without prejudice to renewing the motion at a later date.

### A. Order

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion to withdraw admissions, filed on November 19, 2018, is GRANTED;
2. Plaintiff's deemed admissions are withdrawn; and
3. The court's December 26, 2018, scheduling order is VACATED, with dates to be reset following the district court's ruling on Defendants' motion for summary judgment.

### B. Recommendations

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' October 15, 2018, motion for summary judgment be denied without prejudice; and
2. This case be referred back to the magistrate judge for further proceedings, including the issuance of a new scheduling order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **ten (10) days** after the date the objections are filed. The parties are

advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 18, 2019**  /s/ **Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE