UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE HARRIS,<br><br>    Plaintiff,<br><br>    vs.<br><br>HUMBERTO GERMAN, et al.,<br><br>    Defendants. | 1:15-cv-01462-DAD-GSA-PC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (ECF No. 58.)**<br><br>**DEADLINE TO PRODUCE DOCUMENTS: <u>OCTOBER 25, 2019</u>** |

## I. BACKGROUND

Devonte Harris ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with the First Amended Complaint filed by Plaintiff on March 14, 2016, against defendants Correctional Officer (C/O) Humberto German, C/O Philip Holguin, and C/O R. Burnitzki (collectively, "Defendants"), for use of excessive force in violation of the Eighth Amendment; and against defendant C/O Philip Holguin for retaliation in violation of the First Amendment.[1] (ECF No. 8.)

---

[1] On January 17, 2019, the court dismissed all other claims and defendants from this case for Plaintiff's failure to state a claim. (ECF No. 31.)

On January 31, 2019, Plaintiff filed a motion to compel production of documents. (ECF No. 58.) On February 14, 2019, Defendants filed an opposition to the motion. (ECF No. 62.) Plaintiff did not file a reply to the opposition.

On August 12, 2019, the court issued an order requiring Plaintiff to address the status of his request in the motion to compel for production of two videotapes in light of Defendants' report that they had provided those videotapes to Plaintiff for viewing. (ECF No. 69.) On September 20, 2019, Plaintiff filed a response to the court's order, withdrawing his request for production of the two videotapes. (ECF No. 76.)

The remaining requests in Plaintiff's motion to compel are now before the court. Local Rule 230(*l*).

## II. PLAINTIFF'S ALLEGATIONS AND CLAIMS AT ISSUE

### A. <u>Allegations</u>

The events at issue in the operative First Amended Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, where Plaintiff is presently incarcerated.

A summary of Plaintiff's allegations in the First Amended Complaint follow:

On February 24, 2011, Plaintiff was housed in the Security Housing Unit. At about 1:15 p.m., C/Os were releasing prisoners to the exercise modules. C/Os defendant German, defendant Holguin, Menzie [not a defendant], Lovelady [not a defendant], and Botello [not a defendant] skipped Plaintiff's cell during yard and then ignored him when he called them to ask why. C/O Womack [not a defendant] was working in the control booth. Defendants German and Holguin came back and released Plaintiff for yard last. Plaintiff stripped out and defendant German kept asking him, "What's the problem?" Defendant German continued to hold Plaintiff's clothing as he stood naked, apparently expecting an answer. Plaintiff said, "I'm done stripping out, can I have my clothes back?" Plaintiff got dressed and defendant German handcuffed him.

As they escorted Plaintiff to the yard, defendant Holguin placed Plaintiff against the wall by the exit door of the building and began pressing him up against the wall. Defendant German said, "You are getting your yard, so what's the problem?" Plaintiff said that defendant

German was pressing him hard into the wall unnecessarily. Defendant German said shut up or you are not going to receive yard. Plaintiff said he knows the law and has family who care, so he doesn't care what they do. Defendant German said shut up and don't talk. They exited the building and walked towards the yard cages. Sergeant Martinez [not a defendant] saw defendant German from the track holding Plaintiff aggressively and asked, "What's going on?" Plaintiff began to tell him, and defendant German jerked Plaintiff to a standstill and said, "I thought I told you not to talk." At seeing this, Sergeant Martinez said to just escort Plaintiff back to his cell.

Upon entering the building, defendants German and Holguin slammed Plaintiff's face into the divider of their office window. Holguin held Plaintiff's face sideways against the window. German kicked Plaintiff's legs apart, making him do the splits. Holguin shouted, "Fuck the law and fuck your family." German said, "What you wanna do" over and over. C/O German threatened to take Plaintiff to the ground. Sgt. Martinez, C/O Menzie, C/O Lovelady, and C/O Botello entered the building. C/O Womack witnessed from the control booth. They did nothing, nor said nothing while Holguin had Plaintiff's face pressed against the window and German had Plaintiff's legs unnaturally spread apart. Plaintiff said he just wanted to go to yard, and German said, "You are not going to yard, so where do you want to go, back to your cell?" Plaintiff said he wanted to talk to the lieutenant for an excessive force interview. Sergeant Martinez said, "You'll get what you got coming, you'll get your excessive force interview."

Defendants German and Holguin escorted Plaintiff back to his cell. Plaintiff suffered knots on his forehead, a swollen cheek, pain in his neck, pain on the right side of his chest, and pain in the small of his back. On February 26, 2011, Sgt. Hubbard [not a defendant] interviewed Plaintiff and documented his injuries on video. Sgt. Rasley [not a defendant] operated the video camera. Plaintiff was medically evaluated by a nurse. On February 27, 2011, an RN evaluated Plaintiff. On February 29, 2011, another RN evaluated him. At some point, Hubbard and Rasley [not defendants] destroyed the February 26, 2011 video documenting his injuries while they were still visible. Plaintiff filed a prison appeal. On May

16, 2011, two sergeants conducted another videotaped interview of Plaintiff, but his injuries had already healed. They claimed to have lost the February 26, 2011 video.

On March 10, 2011, defendant German denied Plaintiff his breakfast in retaliation for the excessive force allegations Plaintiff made against him. Defendant German refused Plaintiff's inmate request form asking why.

On April 18, 2011, C/O Cordova [not a defendant] and C/O Borgess [not a defendant] retaliated against Plaintiff for the allegations he made against their co-workers, defendants German and Holguin. They denied Plaintiff breakfast and lunch, and then falsified his segregation record saying they had delivered both to Plaintiff. Later that morning, C/O Menzie [not a defendant] escorted the nurse. When the nurse delivered Plaintiff's medication, Plaintiff held the food port on his cell and told Menzie he wanted to see the sergeant about his breakfast and lunch being withheld. Menzie continued escorting the nurse. Defendant Holguin came to Plaintiff's cell to see if he wanted to go to a disciplinary hearing. Plaintiff refused because he was holding the food port. Defendant Holguin summoned Sgt. Martinez who ordered Holguin to pepper spray Plaintiff to secure the food port. Defendant Holguin pepper sprayed Plaintiff and Plaintiff released the food port and went to the middle of his cell, turning his back. Defendant Holguin put his pepper spray through the food port and began spraying Plaintiff in the back of his head, neck, and back. Plaintiff suffered severe burning sensations and chest pain. Borgess [not a defendant] and another C/O escorted Plaintiff to the hospital to be evaluated. Borgess and Cordova [not defendants] doctored Plaintiff's segregation records to falsely report that he had refused his breakfast and lunch. Plaintiff was moved to a different housing unit in the SHU.

On August 28, 2011, defendant C/O Holguin and C/O Pano [not a defendant] came to Plaintiff's housing unit to escort him to the yard. They conducted an unclothed body search, handcuffed Plaintiff behind his back and began walking outside toward the yard cages. Defendant Holguin told Plaintiff to pull up his boxers, which was impossible because Plaintiff was handcuffed behind his back. Plaintiff told defendant Holguin to pull his eyes up. Defendant Holguin then began escorting Plaintiff to the rotunda of his housing unit. There was

4

a cage located there and while guiding Plaintiff into it, defendant Holguin shoved Plaintiff into the wall causing pain in Plaintiff's shoulder. Holguin then secured the cage and left. C/O Lovelady [not a defendant] and defendant C/O Burnitzki walked by and asked Plaintiff what was going on. Plaintiff said that defendant Holguin had used excessive force against him, and the sergeant should be notified. They took no action regarding this matter. Afterward, defendant Holguin came to the rotunda to take Plaintiff back to his cell when yard time was over.

Defendants Holguin and Burnitzki and C/O Leal [not a defendant] took Plaintiff to his cell but did not have the control booth C/O close the cell door. They came all the way into the cell with Plaintiff. Defendants Burnitzki and Holguin began pushing Plaintiff back and forth to each other several times. Defendant Holguin then pushed Plaintiff into the wall, jammed his left arm into Plaintiff's back and used his right hand to press Plaintiff's face against the wall while defendant Burnitzki pulled on the handcuffs from behind. Defendant Holguin told Plaintiff, "You're not hit, you are going to stop disrespecting me and I don't care about any lawsuit." Plaintiff said he did not disrespect him. Defendant Holguin was mad because he was under investigation by internal affairs for previously using excessive force against Plaintiff. Defendant Burnitzki then said, "Internal affairs are not going to do shit." Holguin said next time they are going to really hurt him. Defendant Holguin then pulled Plaintiff by the handcuffs to the cell door and took his handcuffs off.

Plaintiff requests monetary and declaratory relief.

### B. Claims - Legal Standards

#### 1. Excessive Force

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used,

the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### 2. **Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

## III. MOTION TO COMPEL

### A. **Legal Standard**

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). In response to a request for production of documents under Rule 34, a party is to produce all relevant documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

Under Rule 37(a), a party may move for an order compelling disclosure or discovery if "a party fails to produce documents. . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The party seeking to compel discovery has the initial burden to establish that its request is proper under Rule 26(b)(1). If the request is proper, "[t]he party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07-CV-200 JM, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009). The party resisting discovery is "required to carry a heavy burden of showing" why discovery should be denied. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)). Generally, if the responding party objects to a discovery request, the party moving to compel bears the burden of demonstrating why the objections are not justified. E.g., Grabek v. Dickinson, No. CIV S–10–2892 GGH P, 2012 WL 113799, at *1 (E.D.Cal. Jan. 13, 2012); Ellis v. Cambra, No. 1:02–cv–05646–AWI–SMS (PC), 2008 WL 860523, at *4 (E.D.Cal. Mar. 27, 2008). This requires the moving party to inform the court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious. Grabek, 2012 WL 113779, at *1.

### B. Plaintiff's Motion

Plaintiff seeks to review an investigatory report containing a "use-of-force critique and qualitative evaluation of [Plaintiff's] excessive force allegations against defendants." (ECF No. 58 at 2 ¶ 5.) Plaintiff submitted a request to defendant P. Holguin for production of the review and evaluation. It was objected to on the grounds that it was overly broad, vague, and protected by the official information privilege. Using the ten factors from the test in Kelly v. City of San Jose, 114 F.R.D. 653, 659 (N.D. Cal. 1987), Plaintiff argues that the Confidential Appeal

7

inquiry package [investigatory report] should be disclosed because Defendants cannot assert an official information privilege to justify withholding any portion of the Confidential Appeal supplement to Plaintiff's administrative appeal log no. COR-11-01080.  At issue is Plaintiff's request for production of documents, set one, no. 1, and Defendant P. Holguin's response directly below.

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE**

**REQUEST FOR PRODUCTION NO. 1:**

"Review of use of force critique and qualitative evaluation of Plaintiff's allegation of excessive force against defendant on February 24, 2011."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

"Defendant objects to this request on the grounds that it is overly broad, is vague as to 'qualitative evaluation,' assumes facts which have not been admitted, and calls for the production of documents which are protected from disclosure by California Code of Regulations, Title 15, § 3321 and § 3370, and the official information privilege. Without waiving these objections, and after a reasonable search and diligent inquiry, no use of force critique could be located within Defendant's possession, custody, or control.  All responsive, non-confidential documents in Defendant's possession, custody, or control are attached as Exhibit A.  See attached Privilege Log."
(ECF No. 58 at 14-15.)

Defendants submitted a declaration by Mary Kimbrell, Litigation Coordinator at Corcoran State Prison, in support of Defendants' privilege log, opposing disclosure of the responsive confidential appeal supplement to administrative appeal log no. COR-11-01080.[2] Plaintiff claims that the requested information is particularly important to his case because the excessive use of force interview, videotaped a day after the incident when Plaintiff's wounds were still fresh and visible, disappeared in spite of numerous protective measures to preserve the chain of evidence.

---

[2] Plaintiff has submitted Defendants' privilege log and declaration as exhibits to his motion to compel.  (ECF No. 58 at 19-23.)

### C. Defendants' Opposition

In opposition to the motion to compel, Defendants argue that the official information privilege justifies their withholding of the confidential investigatory report sought by Plaintiff, and disclosure of the report would violate state law and jeopardize the safety and security of the institution, correctional staff, and other inmates. Defendants submitted a privilege log and M. Kimbrell's declaration with their responses to Plaintiff's request for production of documents. Defendants argue that Plaintiff has not met his burden to establish that disclosure of this document overrides Defendants' concerns. Defendants contend that the Kelly test has no place here.

### D. Evaluation of Defendants' Official Information Privilege Claim

As noted above, Defendants maintain that the investigatory report sought by Plaintiff is privileged. Rather than provide Plaintiff with the investigatory report, Defendants served Plaintiff with a privilege log that identified the documents withheld as "Confidential Appeal Supplement to 602 log no. COR-11-01080" and asserted the following: "*Privilege*: California Code of Regulations Title 15, §§ 3321 and 3370; official-information privilege; and the safety and security of the institution, staff, and inmates. *See* Declaration of M. Kimbrell." (ECF No. 58 at 19.)

Federal common law recognizes a qualified privilege for official information. Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal., 511 F.2d 192, 198 (9th Cir. 1975). In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege. Soto v. City of Concord, 162 F.R.D. 603, 613–14 (N.D.Cal. 1995). The balancing test "is moderately pre-weighted in favor of disclosure." Kelly, 114 F.R.D. at 661. However, before a court will engage in this balancing of interests, the party asserting the privilege must properly invoke the privilege by making a "substantial threshold showing." Soto, 162 F.R.D. at 613. The privilege "must be formally asserted and delineated in order to be raised properly," and the party opposing disclosure must

"state with specificity the rationale of the claimed privilege." <u>Kerr v. United States Dist. Ct. for the Northern Dist. of Cal.</u>, 511 F.2d 192, 198 (9th Cir. 1975).

In order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. <u>Id.</u> "The claiming official must 'have seen and considered the contents of the documents and himself [or herself] have formed the view that on grounds of public interest they ought not to be produced' and state with specificity the rationale of the claimed privilege." <u>Kerr</u>, 511 F.2d at 198. The affidavit must include: "(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." <u>Soto</u>, 162 F.R.D. at 613 (quoting <u>Kelly</u>, 114 F.R.D. at 670).

The party resisting discovery must specifically describe how disclosure of the requested information in that particular case would be harmful. <u>Soto</u>, 162 F.R.D. at 613-14. If the opposing party fails to meet the threshold burden requirement of establishing cause to apply the privilege, the privilege will be overruled. <u>Chism v. County of San Bernardino</u>, 159 F.R.D. 531, 533 (C.D. Cal. 1994). Ordinarily, a "party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." <u>Tornay v. United States</u>, 840 F.2d 1424, 1426 (9th Cir. 1988) (citing <u>United States v. Hirsch</u>, 803 F.2d 493, 496 (9th Cir. 1986); <u>In re Roman Catholic Archbishop of Portland in Oregon</u>, 661 F.3d 417, 424 (9th Cir. 2011) (explaining that "the party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material").

"State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." <u>Kelly</u>, 114 F.R.D. at 655.

Defendants argue that disclosure of the Confidential Appeal Supplement requested by Plaintiff would present a serious threat to the safety and security of CDCR institutions, its staff, and other inmates, and would undermine the ability of CDCR to conduct self-critical analysis and engage in deliberative and investigative processes. In support of this argument, Defendants have provided the declaration of M. Kimbrell, Litigation Coordinator at Corcoran State Prison. (Kimbrell Decl., ECF No. 58 at 21.)

In relevant part, M. Kimbrell declares:

> "4. The Confidential Appeal inquiry package for any given administrative appeal contains confidential statements made by third-party inmates and staff members. Disclosing such information would invade the privacy rights of these individuals, because witnesses (both staff and inmate) often cooperate with investigations with the expectation that their statements will remain confidential. Inmate witnesses are significantly less likely to cooperate with investigations if they knew their statements could be disclosed and they could be revealed as cooperating with investigators, because of the increased likelihood of being targeted for assault by other inmates. And staff witnesses may not be as forthright in cooperating with investigations if they knew that their words could be used against them by an inmate in civil litigation.
>
> 5. Additionally, information obtained during staff investigations is maintained as confidential to encourage staff to make truthful statements and to encourage investigating staff to accurately report their findings. Disclosing this type of information would hinder CDCR's ability to conduct accurate and reliable investigations, which would jeopardize the safety and security of prisons under its management.
>
> 6. Further, these documents are also part of the deliberative policy-making process and disclosure of these documents to inmates will set a precedent to other inmates that they can obtain these internal documents at any time. Disclosure of such documents would educate inmates on the methods by

which staff are evaluated. Armed with this information, inmates could falsely accuse staff members or otherwise manipulate the investigation process, thereby hampering future investigations.

7. Finally, such documents are internal memoranda used in the review and evaluation of staff. As internal communications between institution staff, these documents contain several statements which are pre-decisional and deliberative between CDCR staff and the agency decision-maker on whether Defendants acted appropriately. These documents contain recommendations and advisory opinions which reflect the personal opinions of the writers rather than the policy of the agency. Copies of these documents are not given to inmates due to their confidential nature and disclosure would expose the inner workings of the institution."

(Id. at 22-23.)

Defendants argue that "the Kelly test has no place here" because the test is "meant to apply to local police agencies" and "as Plaintiff correctly notes, several of the factors are nonsensical or irrelevant in a correctional setting." (ECF No. 62 at 3:7-10.) However, Kelly involves an excessive force claim against an officer, and the officer seeks to withhold internal investigation files raising similar enough governmental concerns to subject Plaintiff's request for an investigatory report to a Kelly test analysis. Furthermore, the burden is on Defendants, and not Plaintiff, to demonstrate that the privilege applies to the information in question, which Defendants have not met here. Tornay, 840 F.2d at 1426.

Defendants' legal position appears to amount to the following: every Confidential Appeal inquiry package is privileged and can be withheld from discovery merely by listing it on a privilege log. Defendants appear to have withheld every internal document without regard to its content or importance to the case. Nowhere in Defendants' opposition of supporting declaration do Defendants address the importance of the documents to Plaintiff, or the merits of the case. Defendants' position that all documents related to investigations can be withheld from discovery, regardless of their importance to the case or specific security concerns, also ignores

Supreme Court case law. See Wells v. Gonzales, No. 1:17-CV-01240-DAD-EPG-PC, 2019 WL 4054022, at *4 (E.D. Cal. Aug. 28, 2019). In upholding the Prison Litigation Reform Act (PLRA)'s exhaustion requirement, the United States Supreme Court held that "proper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." Id. (quoting Woodford v. Ngo, 548 U.S. 81, 94–95 (2006)). This passage both shows an expectation that such evidence will be provided in the normal course of litigation, and that such evidence, especially accounts from witnesses, greatly contribute to the quality of the litigation. Wells, 2019 WL 4054022 at *4. Withholding all documents, including statements from witnesses that are made close in time to the incident, from Plaintiff as privileged is directly contrary to this holding. Id. (citing see Caruso v. Solorio, 2018 WL 2254365, at *2 (E.D. Cal. 2018) ("There was nothing legally erroneous about citing Woodford's endorsement of using evidence gathered as part of the inmate grievance process in later litigation. . . . That endorsement is relevant to the balancing test in that it shows the relevance and beneficial use of evidence gathered in a prison's investigation, which should be balanced against the prison's security interests in evaluating the official information privilege. In short, it is appropriate to note that the Supreme Court has referred to the usefulness of witness statements that were generated from an investigation of a grievance.")).

"The Court finds that the privilege log and supporting declaration produced by Defendants are inadequate." See, e.g., Cota v. Scribner, 09CV2507-AJB BLM, 2013 WL 3189075, at *5 ¶ 3 (S.D. Cal. June 21, 2013). To invoke the official information privilege, the government must provide a declaration establishing the five elements of the Kelly test. See Kelly, 114 F.R.D. at 669–70. Id. Here, the declaration fails to adequately address elements 2, 4, and 5. Id. The declarant, M. Kimbrell, fails to declare that she personally reviewed the material in question, as required by element 2. Id. The privilege log is totally inadequate in that it fails to identify any specific document or material withheld and merely names the entire

report requested by Plaintiff's discovery requests. Id. This complete lack of specificity indicates that Defendants have not collected all responsive documents, carefully reviewed them, individually evaluated the potential threat or harm due to disclosure, and then identified which documents were protected by the official information privilege pursuant to elements 4 and 5. Id. Accordingly, the Court finds that Defendants have failed to make a "substantial threshold showing" as a basis for withholding documents under the official information privilege and therefore Defendants may not withhold any documents pursuant to this privilege. Id.

Even if Defendants had made a substantial threshold showing, this does not overcome the pre-weighted balancing test in favor of disclosure. Id. The potential for harm does not outweigh the strong public policy in favor of uncovering civil rights violations. Id. Notably, it appears that Plaintiff is unable to acquire a copy of the investigation report by any other means. Id. The sought-after information has a high degree of potential significance to Plaintiff's case. In an excessive force case such as this, the relevance and discoverability of officers' disciplinary records, including unfounded complaints and allegations of misconduct, are widely recognized. Id. (citing see, e.g., Gibbs v. City of New York, 243 F.R.D. 95 (S.D.N.Y.2007); Frails v. City of New York, 236 F.R.D. 116 (E.D.N.Y.2006); Floren v. Whittongton, 217 F.R.D. 389 (S.D.W.Va. 2003); Hampton v. City of San Diego, 147 F.R.D. 227 (S.D.Cal. 1993)). Nevertheless, "[f]ederal courts are not insensitive to privacy [rights] that arise in discovery matters. . . but these rights must be balanced against the great weight afforded to federal law in civil rights cases against corrections officials." Ibanez v. Miller, 2009 WL 1706665, at *3 (E.D.Cal. June 17, 2009) (citing Soto, 162 F.R.D. at 613). Thus, recognizing the privacy rights of the witnesses in the reports, as well as the potential for harm to these witnesses, the Court finds it appropriate to permit Defendants to redact the names, prisoner identification numbers, and any other identifying information of witnesses who are not a party to this action.

Defendants have also objected to Plaintiff's request for the confidential report on the ground that the document was not found in Defendants' possession, custody, or control.

Defendants' responses should be consistent with their right to request documents pursuant to California Government Code § 3306.5. ("Each employer shall keep each public safety officer's personnel file or a true and correct copy thereof, and shall make the file or copy thereof available with a reasonable period of time after a request thereof by the officer.") Accordingly, Defendants shall provide to Plaintiff copies of the documents at issue requested by Plaintiff that are in the possession, custody, or control of any Defendant or the CDCR.

Defendants shall produce the redacted documents to Plaintiff **no later than October 25, 2019.**

## IV. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel, filed on January 31, 2019, is GRANTED;
2. No later than October 25, 2019, Defendants shall provide Plaintiff with a copy of the Confidential Appeal Supplement to 602 log no. COR-11-01080 dated May 22, 2011; and
3. Defendants are permitted to redact the names, prisoner identification numbers, and any other identifying information of witnesses who are not a party to this action.

IT IS SO ORDERED.

Dated: __September 24, 2019__  __/s/ Gary S. Austin__
UNITED STATES MAGISTRATE JUDGE