UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE HARRIS, | 1:15-cv-01462-DAD-GSA-PC |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION TO COMPEL** |
| vs. | **(ECF No. 66.)** |
| HUMBERTO GERMAN, et al., | |
| Defendants. | |

**I. BACKGROUND**

Devonte Harris ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with the First Amended Complaint filed by Plaintiff on March 14, 2016, against defendants Correctional Officer (C/O) Humberto German, C/O Philip Holguin, and C/O R. Burnitzki (collectively, "Defendants"), for use of excessive force in violation of the Eighth Amendment; and, against defendant C/O Philip Holguin for retaliation in violation of the First Amendment. (ECF No. 8.)

On April 25, 2019, the court issued a scheduling order setting a deadline of August 30, 2019, for completion of discovery, including the filing of motions to compel and a deadline of October 30, 2019, for filing dispositive motions.[1] (ECF No. 65.)

---

[1] On October 15, 2019, the deadlines were extended to December 18, 2019, for completion of discovery (for limited purpose), and February 18, 2020, for filing dispositive motions. (ECF No. 80.)

1

On June 24, 2019, Defendants filed a motion to compel further responses to interrogatories. (ECF No. 66.) On August 16, 2019, Plaintiff filed an opposition to the motion. (ECF No. 70.) On August 22, 2019, Defendants filed a reply. (ECF No. 71.) Defendants' motion to compel is now before the court. Local Rule 230(*l*).

## II. PLAINTIFF'S ALLEGATIONS AND CLAIMS

### A. <u>Allegations</u>

The events at issue in the First Amended Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was incarcerated there.

Plaintiff's allegations follow.

On February 24, 2011, Plaintiff was housed in the Security Housing Unit (SHU). At about 1:15 p.m., C/Os were releasing prisoners to the exercise modules. C/Os German, Holguin, Menzie [not a defendant], Lovelady [not a defendant], and Botello [not a defendant] skipped Plaintiff's cell during yard, and then ignored him when he called them to ask why. C/O Womack [not a defendant] was working in the control booth. C/Os German and Holguin came back and released Plaintiff for yard last. Plaintiff stripped out and C/O German kept asking him, "What's the problem?" C/O German continued to hold Plaintiff's clothing as he stood naked, apparently expecting an answer. Plaintiff said, "I'm done stripping out, can I have my clothes back?" Plaintiff got dressed and C/O German handcuffed him. As they escorted Plaintiff to the yard, C/O Holguin placed Plaintiff against the wall by the exit door of the building and began pressing him up against the wall. C/O German said, "You are getting your yard, so what's the problem?" Plaintiff said that C/O Holguin was pressing him hard into the wall unnecessarily. C/O German said shut up or you are not going to receive yard. Plaintiff said he knows the law and has family who care, so he doesn't care what they do. German said shut up and don't talk. They exited the building and walked towards the yard cages. Sgt. Martinez [not a defendant] saw them from the track holding Plaintiff aggressively and asked, "What's going on?" Plaintiff began to tell him and C/O German jerked Plaintiff to a standstill and said, "I thought I told you not to talk." At seeing this Sgt. Martinez said to just escort Plaintiff back to his cell. Upon entering the building, German and Holguin slammed Plaintiff's face into the divider of their office window. Holguin

held Plaintiff's face sideways against the window. German kicked Plaintiff's legs apart making him do the splits. Holguin shouted, "Fuck the law and fuck your family." German said, "What you wanna do?" over and over. C/O German threatened to take Plaintiff to the ground. Sgt. Martinez, C/O Menzie, C/O Lovelady, and C/O Botello entered the building. C/O Womack witnessed this from the control booth. They did nothing nor said nothing while Holguin had Plaintiff's face pressed against the window, and German had Plaintiff's legs unnaturally spread apart. Plaintiff said he just wanted to go to yard, and German said, "You are not going to yard, so where do you want to go, back to your cell?" Plaintiff said he wanted to talk to the Lieutenant for an excessive force interview. Martinez said, "You'll get what you got coming, you'll get your excessive force interview." German and Holguin escorted Plaintiff back to his cell. Plaintiff suffered knots on his forehead, a swollen cheek, pain in his neck, pain on the right side of his chest, and pain in the small of his back.

On February 26, 2011, Sergeant Hubbard [not a defendant] interviewed Plaintiff and documented his injuries on video. Sergeant Rasley [not a defendant] operated the video camera. Plaintiff was medically evaluated by a nurse. On February 27, 2011, an RN evaluated Plaintiff. On February 29, 2011, another RN evaluated him. On March 10, 2011, German denied Plaintiff his breakfast in retaliation for the excessive force allegations Plaintiff made against him. German refused Plaintiff's inmate request form asking why.

On April 18, 2011, C/O Cordova [not a defendant] and C/O Borgess [not a defendant] retaliated against Plaintiff for the allegations he made against their coworkers German and Holguin. They denied Plaintiff breakfast and lunch and then falsified his segregation record saying they had delivered both to Plaintiff. Later that morning, C/O Menzie [not a defendant] escorted the nurse. When the nurse delivered his medication, Plaintiff held the food port on his cell and told Menzie he wanted to see the Sergeant about his breakfast and lunch being withheld. Menzie continued escorting the nurse. Holguin came to Plaintiff's cell to see if he wanted to go to a disciplinary hearing. Plaintiff refused because he was holding the food port. Holguin summoned Sergeant Martinez who ordered Holguin to pepper spray Plaintiff to secure the food port. Holguin pepper sprayed Plaintiff, and Plaintiff released the food port and went to the middle

of his cell, turning his back. Holguin put his pepper spray through the food port and began spraying Plaintiff in the back of his head, neck, and back. Plaintiff suffered severe burning sensations and chest pain. Borgess and another C/O escorted Plaintiff to the hospital to be evaluated. Borgess and Cordova doctored Plaintiff's segregation records to falsely report that he had refused his breakfast and lunch. Plaintiff was moved to a different housing unit in the SHU.

At some point, Hubbard and Rasley destroyed the video documenting Plaintiff's injuries while they were still visible on February 26, 2011. Plaintiff filed a prison appeal. On May 16, 2011, two sergeants took another videotaped interview of Plaintiff, but his injuries had already healed. They claimed to have lost the February 26, 2011 video.

On August 28, 2011, C/O Holguin and C/O Pano [not a defendant] came to Plaintiff's housing unit to escort him to the yard. They conducted an unclothed body search and then handcuffed Plaintiff behind his back and began walking outside toward the yard cages. Holguin told Plaintiff to pull up his boxers, which was impossible because Plaintiff was handcuffed behind his back. Plaintiff told Holguin to pull his eyes up. Holguin then began escorting Plaintiff to the rotunda of his housing unit. There was a cage located there and while guiding Plaintiff into it, Holguin shoved Plaintiff into the wall causing pain in his shoulder. Holguin then secured the cage and left. C/O Lovelady and C/O Burnitzki walked by and asked Plaintiff what was going on. Plaintiff said that Holguin had used excessive force against him and the Sergeant should be notified. They took no action regarding this matter. Afterward, Holguin came to the rotunda to take Plaintiff back to his cell when yard time was over. Holguin, Burnitzki and C/O Leal [not a defendant] took Plaintiff to his cell but did not have the control booth C/O close the cell door. They came all the way into the cell with Plaintiff. Burnitzki and Holguin began pushing Plaintiff back and forth to each other several times. Holguin then pushed Plaintiff into the wall, jammed his left arm into Plaintiff's back, and used his right hand to press Plaintiff's face against the wall while Burnitzki pulled on the handcuffs from behind. Holguin told Plaintiff, "You're not hit, you are going to stop disrespecting me and I don't care about any lawsuit." Plaintiff said he did not disrespect him. Holguin was mad because he was under investigation by internal affairs for previously using excessive force against Plaintiff. Burnitzki then said,

"Internal affairs are not going to do shit." Holguin said next time they are going to really hurt him. Holguin then pulled Plaintiff by the handcuffs to the cell door and took his handcuffs off.

Plaintiff requests monetary and declaratory relief.

### B.    **Plaintiff's Claims – Legal Standards**

#### 1.    **Excessive Force**

On September 11, 2017, the court found that Plaintiff states cognizable claims for use of excessive force against defendants Holguin, German, and Burnetzski. (ECF No. 21.)

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks

and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."  Id.

### 2. **Retaliation**

On September 11, 2017, the court found that Plaintiff states a cognizable claim for retaliation against defendant Holguin.  (ECF No. 21.)

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under § 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of."  Pratt, 65 F.3d at 808.

### III. MOTION TO COMPEL RESPONSES TO INTERROGATORIES

**Legal Standards -- Federal Rules of Civil Procedure 26(b), 33(a), and 37(a)**

Under Rule 26(b), "[U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to

relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Under Rule 33(a), "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Fed. R. Civ. P. 33(a)(1). An interrogatory may relate to any matter that may be inquired into under Rule 26(b), and [a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. Fed. R. Civ. P. 33(a)(2) (quotation marks omitted). Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath, Fed. R. Civ. P. 33(b)(3), and the grounds for objecting to an interrogatory must be stated with specificity, Fed. R. Civ. P. 33(b)(4); Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981). Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure. Fed. R. Civ. P. 33(c). The responding party shall use common sense and reason. E.g., Collins v. Wal-Mart Stores, Inc., No. 06-2466-CM-DJW, 2008 WL 924935, *8 (D. Kan. Apr. 30, 2008). A party answering interrogatories cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control. Essex Builders Group, Inc. v. Amerisure Insurance Co., 230 F.R.D. 682, 685 (M.D. Fla. 2005). A responding party is not generally required to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made. Gorrell v. Sneath, 292 F.R.D. 629, 629 (E.D. Cal. Apr. 5, 2013); L.H. v. Schwarzenegger, No. S-06-2042 LKK GGH, 2007 WL 2781132, *2 (E.D. Cal. Sep. 21, 2007). If a party cannot furnish details, he should say so under oath and say why and set forth the efforts used to obtain the information, and cannot plead ignorance to information that is from sources within his control. Milner v. National School of Health Technology, 73 F.R.D. 628, 632 (E.D. Pa. 1977). "However, where the answer states that no record exists, the court cannot compel the impossible." Id. at 633 (citing Moss v. Lane Co., 50 F.R.D. 122, 128 (W.D. Va. 1970), aff'd in part, remanded in part, 471 F.2d 853 (4th Cir. 1973)). A sworn answer

indicating a lack of knowledge and no means of obtaining knowledge is not objectionable. Milner, 73 F.R.D. at 633 (citing Brennan v. Glenn Falls Nat. Bank & Trust Co., 19 F.R.Serv.2d 721, 722-23 (N.D.N.Y. 1974)). The responding party has a duty to supplement any responses if the information sought is later obtained or the response provided needs correction. Fed. R. Civ. P. 26(e)(1)(A).

Under Rule 37 of the Federal Rules of Civil Procedure, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)). Generally, if the responding party objects to a discovery request, the party moving to compel bears the burden of demonstrating why the objections are not justified. E.g., Grabek v. Dickinson, No. CIV S–10–2892 GGH P, 2012 WL 113799, at *1 (E.D. Cal. Jan. 13, 2012); Ellis v. Cambra, No. 1:02–cv–05646–AWI–SMS (PC), 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008). This requires the moving party to inform the court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious. Grabek, 2012 WL 113799, at *1; Womack v. Virga, No. CIV S–11–1030 MCE EFB P., 2011 WL 6703958, at *3 (E.D. Cal. Dec. 21, 2011).

### IV.     INTERROGATORIES AND RESPONSES AT ISSUE[2]

**Defendant German's Interrogatory No. 8:**

Describe all injuries that you have ever sustained to your neck, shoulder, face, back, and left arm prior to February 24, 2011.

///

---

[2] Defendants' First Set of Interrogatories from defendants German, Holguin, and Burnitzki, dated May 25, 2018, can be found at ECF No. 66-2 at 5-40 (Exhs. A, B, & C.)) Plaintiff's Supplemental Responses to the Interrogatories at issue, dated June 3, 2019, can be found at ECF No. 66-2 at 130-141 (Exh. N.))

**Plaintiff's Supplemental Response to Defendant German's Interrogatory No. 8:**

Objection. Vague as to "injury." Plaintiff cannot reasonably list every nick to his face from shaving, etc. It's overly broad and unduly burdensome to list every "injury" to face, back, shoulder, neck and left arm from birth to 2/24/11. It is also irrelevant because Plaintiff is entitled to full compensation for all damage proximately resulting from defendants' acts, even though his injuries may have been aggravated by reason of his preexisting physical or mental condition. Henderson v. U.S., 328 F.2d 502 (5th Cir. 1964).

///

**Defendant German's Interrogatory No. 9:**

For all injuries described in your response to Interrogatory No. 8, describe any care you received for those injuries. For each instance, provide the dates of care or treatment by any health care practitioner, the name of each health care practitioner providing such treatment, and the address where each named health care practitioner man be located.

**Plaintiff's Supplemental Response to Defendant German's Interrogatory No. 9:**

Objection. Vague, overly broad, unduly burdensome and irrelevant for reasons described in supplemental response to interrogatory No. 8.

///

**Defendant German's Interrogatory No. 10:**

Describe all interaction or communication with Defendant German prior to February 24, 2011. For each instance, provide the dates of such interaction or communication and state whether any communication was verbal or written.

**Plaintiff's Response to Defendant German's Interrogatory No. 10:**

Objection. Vague as to "interaction" or "communication." Furthermore, Defendant worked in plaintiff's building for months. It would be overly broad and unduly burdensome listing every time he served my breakfast tray, picked up my trash, escorted me to yard, library, etc.

///

///

**Defendant German's Interrogatory No. 11:**

Describe all interaction or communication with Defendant German after February 24, 2011. For each instance, provide the dates of such interaction and communication and state whether any communication was verbal or written.

**Plaintiff's Supplemental Response to Defendant German's Interrogatory No. 11:**

"Objection. Vague and unduly burdensome and overly broad for same reasons described in supplemental response to interrogatory No. 11.

///

**Defendant Burnitzki's Interrogatory No. 8:**

Describe all injuries that you have ever sustained to your neck, shoulder, face, back, and left arm prior to August 28, 2011.

**Plaintiff's Supplemental Response to Defendant Burnitzki's Interrogatory No. 8:**

Objection. Vague as to "injury." Plaintiff cannot reasonably list every nick to his face from shaving, etc. It's overly broad and unduly burdensome to list every "injury" to face, back, shoulder, neck and left arm from birth to 2/24/11. It is also irrelevant because Plaintiff is entitled to full compensation for all damage proximately resulting from defendants' acts, even though his injuries may have been aggravated by reason of his preexisting physical or mental condition. Henderson v. U.S., 328 F.2d 502 (5th Cir. 1964).

///

**Defendant Burnitzki's Interrogatory No. 9:**

For all injuries described in your response to Interrogatory No. 8, describe any care you received for those injuries. For each instance, provide the dates of care or treatment by any health care practitioner, the name of each health care practitioner providing such treatment, and the address where each named health care practitioner man be located.

**Plaintiff's Supplmental Response to Defendant Burnitzki's Interrogatory No. 9:**

Objection. Vague, overly broad, unduly burdensome and irrelevant for reasons described in supplemental response to interrogatory No. 8.

///

**Defendant Burnitzski's Interrogatory No. 10:**

Describe all interaction or communication with Defendant Burnitzki prior to August 28, 2011. For each instance, provide the dates of such interaction and communication and state that communication was verbal or written.

**Plaintiff's Response to Defendant Burnitzski's Interrogatory No. 10:**

Objection. Vague as to "interaction" and "communication." Furthermore, Defendant worked in Plaintiff's building for months. It would be overly broad and unduly burdensome listing every time he served my breakfast tray, picked up my trash, escorted me to yard, library, etc.

///

**Defendant Burnitzki's Interrogatory No. 11:**

Describe all interaction or communication with Defendant Burnitzki after August 28, 2011. For each instance, provide the dates of such interaction and communication and state whether that communication was verbal or written.

**Plaintiff's Supplemental Response to Defendant Burnitzki's Interrogatory No. 11:**

Objection. Vague and unduly burdensome and overly broad for same reasons described in supplemental response to interrogatory No. 10.

///

**Defendant Holguin's Interrogatory No. 9:**

Describe all injuries that you have ever sustained to your neck, shoulder, face, back, and left arm prior to February 24, 2011. For each instance, provide the dates of care or treatment by each health care practitioner, the name of each health care practitioner, and the address where each health care practitioner is located.

**Plaintiff's Supplemental Response to Defendant Holguin's Interrogatory No. 9:**

Objection. Vague as to "injury." Plaintiff cannot reasonably list every nick to his face from shaving, etc. It's overly broad and unduly burdensome to list every "injury" to face, back, shoulder, neck and left arm from birth to 2/24/11. It is also irrelevant because Plaintiff is entitled to full compensation for all damage proximately resulting from defendants' acts, even though his

injuries may have been aggravated by reason of his preexisting physical or mental condition. Henderson v. U.S., 328 F.2d 502 (5th Cir. 1964).

///

**Defendant Holguin's Interrogatory No. 10:**

For all injuries described in your response to Interrogatory No. 9, describe any care you received for those injuries. For each instance, provide the dates of care or treatment by any health care practitioner, the name of each health care practitioner providing such treatment, and the address where each named health care practitioner may be located.

**Plaintiff's Supplemental Response to Defendant Holguin's Interrogatory No. 10:**

Objection. Vague, overly broad, unduly burdensome and irrelevant for reasons described in supplemental response to interrogatory No. 9.

///

**Defendant Holguin's Interrogatory No. 11:**

Describe all interaction or communication with Defendant Holguin prior to February 24, 2011. For each instance, provide the dates of such interaction and communication and state whether any communication was verbal or written,

**Plaintiff's Supplemental Response to Defendant Holguin's Interrogatory No. 11:**

Objection. Vague as to "interaction" or "communication." Furthermore, Defendant worked in plaintiff's building for months. It would be overly broad and unduly burdensome listing every time he served my breakfast tray, picked up my trash, escorted me to yard, library, etc.

///

**V.  DEFENDANTS' MOTION**

Defendants request a court order compelling Plaintiff to respond to several of Defendants' interrogatories on the ground that Plaintiff's responses were clearly deficient and he failed to adequately supplement them. On May 25, 2018, Defendants served Plaintiff with written discovery. (Hennes Decl., ECF No. 66-2 at 1 ¶ 2.). After Plaintiff failed to timely respond to this discovery, Defendants moved to compel responses. (ECF No. 38.) This prompted Plaintiff

to finally provide responses on January 29, 2019, more than seven months after the discovery was originally propounded, prompting Defendants to withdraw their motion to compel. (Hennes Decl., ECF No. 66-2 at 3 ¶ 6.) However, Defendants argue that several of the responses were inadequate, with Plaintiff blatantly refusing to provide any information. After some written attempts to meet and confer, Plaintiff has now served supplemental responses that are again inadequate.

As for Plaintiff's responses to the three identical interrogatories requesting Plaintiff to describe his "injuries," – Defendant German's Interrogatory No. 8, Defendant Burnitzki's Interrogatory No. 8, and Defendant Holguin's Interrogatory No. 9 – Defendants argue that Plaintiff's objection is vague and unmeritorious. Defendants also argue that Plaintiff's objection demonstrates the relevance of the interrogatory because Plaintiff asserts that he is entitled to damages proximately resulting from Defendants' actions and alludes to possible preexisting physical or mental conditions, yet he refuses to provide any information about any preexisting injuries.

As for Plaintiff's objections to the three similar interrogatories asking Plaintiff to describe the care he received for his injuries, dates of care, and names and addresses of health care providers – Defendant German's Interrogatory No. 9, Defendant Burnitzki's Interrogatory No. 9, and Defendant Holguin's Interrogatory No. 10 – Defendants argue that the objections are clearly deficient because they lack merit. Plaintiff relies on his objections from the previous interrogatory. Defendants contend that the care Plaintiff received for any injuries previously sustained on the areas of his body implicated in this lawsuit is clearly relevant and Plaintiff is not justified by his non-specific objections in his refusal to provide any response.

As for Plaintiff's responses to the similar interrogatories requesting Plaintiff to describe his interaction with each of the Defendants before and after the date of the incidents at issue – Defendant German's Interrogatories Nos. 10 and 11, Defendant Burnitzki's Interrogatories Nos. 10 and 11, and Defendant Holguin's Interrogatory No. 11 – Defendants argue that Plaintiff offers no information in response to the interrogatory, and Plaintiff's objection is unmeritorious because
///

the interrogatory is not overly broad and is relevant, particularly with respect to any claim that Defendants were motivated to harm Plaintiff due to their previous interactions.

### VI. PLAINTIFF'S OPPOSITION

Plaintiff argues that Defendants' motion to compel fails to establish the relevance of the interrogatories to Defendants' defense or how Plaintiff's objections are not justified. Plaintiff stands by his objections and argues that Defendants have not made any attempt to reasonably limit the time spans for which they request information.

For the three identical interrogatories requesting Plaintiff to describe his "injuries," – Defendant German's Interrogatory No. 8, Defendant Burnitzki's Interrogatory No. 8, and Defendant Holguin's Interrogatory No. 9 – Plaintiff notes that the time span for the information requested is the past 30 years of Plaintiff's life. Plaintiff argues that Defendants have not attempted to clarify what type of injury information they seek. Plaintiff argues that his injuries for the past 30 years are not relevant to Defendants' claims that they did not use force on 2/24/11 and 8/28/11, and that defendant Holguin only used pepper spray against Plaintiff to secure the food port on 4/18/11. Plaintiff also argues that his past injuries are not relevant to damages in this case because Plaintiff is entitled to damages even if his injuries by Defendants aggravated preexisting physical or mental injuries.

For the three similar interrogatories asking Plaintiff to describe the care he received for his injuries, dates of care, and names and addresses of health care providers – Defendant German's Interrogatory No. 9, Defendant Burnitzki's Interrogatory No. 9, and Defendant Holguin's Interrogatory No. 10 – Plaintiff stands by his objections that the interrogatories are vague, overly broad, and irrelevant. Plaintiff argues that Defendants have not met their burden to explain why the information sought is relevant and why Plaintiff's objections are not meritorious. Plaintiff claims that Defendants use circular reasoning, stating that the care Plaintiff received for the injuries to areas of his body implicated in the current lawsuit is relevant because it is "clearly relevant."

With respect to the interrogatories requesting Plaintiff to describe his interactions with each of the Defendants before and after the date of the incidents at issue – Defendant German's

Interrogatories Nos. 10 and 11, Defendant Burnitzki's Interrogatories Nos. 10 and 11, and Defendant Holguin's Interrogatory No. 11 – Plaintiff stands by his objections on the grounds that they are vague as to "interaction" or "communication," and they are overly broad and burdensome because the Defendants have worked in Plaintiff's building for months and Plaintiff interacts with them frequently. Plaintiff argues that Defendants have not clarified the nature of the interactions for which they seek information, or made any attempt to limit the time span other than distinguishing before and after the events at issue. Plaintiff disagrees with Defendants' assertion that the interrogatories are relevant to whether Defendants were motivated to harm Plaintiff due to previous interaction, because Plaintiff makes no such claim. Plaintiff also argues that Defendants' explanation that the interrogatories are relevant to potential impeachment at trial is "speculative fishing" that does not warrant a response by Plaintiff.

## VII. DISCUSSION

Generally, a discovery request without any temporal or other reasonable limitation is objectionable on its face as overly broad. See, e.g., Ehrlich v. Union Pacific R.R. Co., 302 F.R.D. 620, 625 (D. Kan. 2014); Johnson v. Kraft Foods North America, Inc., 236 F.R.D. 535, 541-542 (D. Kan. 2006). A document request or interrogatory is also overly broad or unduly burdensome on its face if it: "(1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information." Moses v. Halstead, 236 F.R.D. 667, 672 (D. Kan. 2006). "Despite the overly broad nature of [a discovery request], a party typically has a duty to respond to it to the extent the [discovery request] is not objectionable and can be narrowed to an appropriate scope." Id. "This rule does not apply, however, and the Court will not compel further response, when inadequate guidance exists to determine the proper scope of the [discovery request]." Id. In addition, when a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." Johnson, 236 F.R.D. at 542 n.20.

The discovery process is subject to the overriding limitation of good faith, and callous disregard of discovery responsibilities cannot be condoned. Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1246 (9th Cir. 1981) (quotation marks and citation omitted). Defendants

have not met their burden to inform the court why Plaintiff's objections are unmeritorious and why the information requested is relevant. Stating that Plaintiff's objections are "vague and unmeritorious," "clearly deficient because they lack merit," and "unmeritorious because the interrogatory is not overly broad" are not sufficient to explain *why* the objections are unmeritorious. Defendants assert that the information requested is relevant for specific purposes, such as to show whether previous interactions between Plaintiff and Defendants motivated Defendants to harm Plaintiff, but they have not narrowed the scope of the discovery requested to reflect those purposes or other purposes. Instead of arguing that the interrogatories are not vague or overly broad, it would have benefited the parties for Defendants to clarify, for example, that they are seeking "injuries to Plaintiff that had lasting effects and required medical care from a health care practitioner." *All* of Plaintiff's injuries are not of consequence in determining this action. After Plaintiff raised his objections, Defendants should have reasoned that the scope of their interrogatories should be narrowed in time span, type of injury, and/or type of interaction with Defendants, but they did not.

Accordingly, Defendants' motion to compel shall be denied.

**VIII. CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' motion to compel, filed on June 24, 2019, is DENIED.

IT IS SO ORDERED.

Dated: __**December 5, 2019**__                     _____/s/ Gary S. Austin_____
                                                                              UNITED STATES MAGISTRATE JUDGE